# <u>Complaint</u>

## Date: 5.25.2018

### <u>IN THE UNITED STATES FEDERAL COURT MIDDLE DISTRICT OF FLORIDA</u>

### In the matter of trademark registration N0. 5380899

### Registration Date January 16, 2018

### Mark: "1989"

Daniel James Silva

Plaintiff,

Against          Case number 3:18cv – 688-J -34 JRK

TAS RIGHTS MANAGEMENT, LLC

Defendant.

1.     On January 16, 2018 TAS Rights Management LLC, was granted trademark US Registration Number:5380899 (1989) illegally and fraudulently the trademark application was originally filed on August 11, 2014, ill describe over the next few paragraph's why the trademark must be cancelled and how the defendant committed fraud.

2.     The number (1989) is a symbol of the Hindu Arabic system it is both part of a SYSTEM and an IDEA, systems and ideas are not eligible for federal protection, 1989 is both a number and a mark of a time in history. 1989 was a common year starting on Sunday of the Gregorian calendar, the 1989th year of the Common Era and Anno Domini designations, the 989th year of the 2nd millennium, the 89th year of the 20th century, and the 10th and last year of the 1980s decade.

3.  The trademark 1989 was applied for due to the fact (Taylor Alison Swift) crated a musical album called 1989, that was released on October 27, 2014, the album sold 1,287,000 copies during its first week of release As of January 2018, 1989 has sold 6.11 million copies in the US, T.A.S. Management stands for her name Taylor Alison Swift, which she owns whole or in part.



4. Not only did she apply for the mark (1989) US Registration Number:5380899 she also filed for the mark (1989) 66 other times with 66 other trademark applications –  US serial numbers,

86838684,868386655,86369161,86606878,86434767,86434766,86434 738,86434733,86434729,86434726 is an example of 10 of the applications she filled there's at least another 57 applications that I'm aware of that the Registrant filed under the same mark (1989.)

5. There are many levels of fraud on the trademark office for mark (1989) US Registration Number:5380899, I will attempt to best describe them below-

The mark is too generic, generic trademarks are marks that the relevant purchasing public understands primarily as the common name for the goods or services the mark represents. Generalness therefore is a subset of "descriptiveness." In fact, it's the ultimate descriptiveness in that it perfectly and wholly identifies goods or services.

Descriptive trademarks are generally not allowed registration on the Principal Federal Register, except in certain circumstances, Because of this, a generic mark can be booted from the Register with a cancellation proceeding and is not even allowed registration on the Supplemental Register, numbers are more generic then even generic word marks if anyone saw the mark (1989) they would immediately see it as the Hindi Arabic number 1989 and not the Registrants album.



6.      It's to deceptive, the mark (1989) US Registration Number:5380899 is clearly the Hindi Arabic symbol 1989 and is not of the Registrants creation nor does she have the right to own, Which is also FRAUD there has never been a number granted as a trademark in history standalone, there has been 3 numbers I've come across that were used in a company's trademark but not a number alone, (747) referring to the brand of plane Boeing 747 and the number (13) that a staple company used in Michigan and 501 Levi jeans, both marks had specific indicators to show the sources of origin unlike (1989).

7.      Fraud on the trademark office, Lanham Act § 14(3) permits cancellation of a U.S. trademark registration, at any time, if the registration "was obtained fraudulently.  "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representation of fact in connection with his application." Torresv. Cantine Torresella S.r.l., 1 U.S.P.Q.2d 1483, 1484 (Fed. Cir.1986).

8.      The Trademark Trial and Appeal Board has synthesized this standard to three elements: Statements that are (1)"false," (2) "material," and (3) "made knowingly." Mister Leonard  Inc. v. Jacques Leonard Couture Inc., 23U.S.P.Q.2d 1064, 1066 (T.T.A.B. 1992) (emphasis in original).



9.    (1) the statement that 1989 was applied for by the
Registrant in a bona fide intent is false because the number (1989)
can't be owned do to its nature (2) all material involved with the mark
is all fraudulent by nature (3) the fraud was made knowingly because
the  Registrant (Taylor Alison swift) said on august 18th 2014 on live
television quote ( and being born on December 13th 1989 this album is
called 1989) as seen here
(https://www.youtube.com/watch?v=8fDlhMAeN9Y&index=3&t=0s&lis
t=PLpsyEwtx2np_hDSFWNdMP8pHAGK9dyL2U) between minutes 3:01
and 3:08, admitting the name of the album was the year 1989 and not
her brand.



10.    On 5/17/2017 4:38:35 PM an official email was sent to TAS
RIGHTS MANAGEMENT, LLC (trademarks@milomlaw.com), informing of
a office action government attorney  /Won T. Oh/ Law Office 114, (571)
272 – 9204 won.oh@uspto.gov stated that (Registration is refused
because the specimen does not show the applied-for mark in the
drawing in use in commerce in International Classes 6, 16, 18, 20, 21, 25
and 28.  Trademark Act Sections 1 and 45, 15 U.S.C. §§1051, 1127; 37
C.F.R. §§2.34(a)(1)(iv), 2.56(a); TMEP §§904, 904.07(a), 1301.04(g)(i).
Specifically, the specimen displays the mark as 'T.S. 1989' (class 6, 18,
21), 'LIVE 1989 NEON LITHO' (Class 16), 'TAYLOR SWIFT 1989' (Class 20,
28) and 'OMBRE 1989' (Class 25) however, the drawing displays the
mark as '1989') On Nov. 16, 2017 the Registrant submitted a
completely different specimen which itself is (FRAUD).



11.    Won, later went on the say (Regarding whether applicant may submit an amended drawing in response to this refusal, applicant is advised that the drawing of a mark can be amended only if the amendment does not materially alter the mark as originally filed.  37 C.F.R. §2.72(a)(2); see TMEP §§807.12(a), 807.14 et seq.  In this case, amending the mark in the drawing to conform to the mark on the specimen would be a material alteration and would not be accepted, because the difference between the mark in the specimen and the drawing is significant and each mark creates a different commercial impression.

12.    Specifically, the addition of the terms 'T.S.' (class 6, 18, 21), 'LIVE' and 'NEON LITHO' (Class 16), 'TAYLOR SWIFT' (Class 20, 28) and 'OMBRE' (Class 25) represent a material alteration. Won went on to later approve a fraudulent change to the specimen, that is completely different from 1989 and has the letters t.s. in front of it.

13.    TMEP 1207.02: MARKS THAT ARE LIKELY TO DECEIVE

 In addition to referring to a mark that so resembles another mark as to be likely to cause confusion or mistake, §2(d) refers to a mark being likely "to deceive." The Registrant filed for at least 67 trademarks applications with the mark (1989) as the mark which would cause severe confusion, as well as deception, trade mark 1989 is identical to the (mark) in history 1989.



14.                    Elements of Common Law Fraud

In the United States, common law generally identifies nine elements needed to establish fraud: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) the representor's knowledge of its falsity or ignorance of its truth; (5) the representor's intent that it should be acted upon by the person in the manner reasonably contemplated; (6) the injured party's ignorance of its falsity; (7) the injured party's reliance on its truth; (8) the injured party's right to rely thereon; and (9) the injured party's consequent and proximate injury. See, e.g., Strategic Diversity, Inc. v. Alchemix Corp., 666 F.3d 1197, 1210 n.3, 2012 U.S. App. LEXIS 1175, at *25 n.3 (9th Cir. 2012) (quoting Staheli v. Kauffman, 122 Ariz. 380, 383, 595 P.2d 172, 175 (1979)); Rice v. McAlister, 268 Ore. 125, 128, 519 P.2d 1263, 1265 (1975); Heitman v. Brown Grp., Inc., 638 S.W.2d 316, 319, 1982 Mo. App. LEXIS 3159, at *4 (Mo. Ct. App. 1982); Prince v. Bear River Mut. Ins. Co., 2002 UT 68, ¶ 41, 56 P.3d 524, 536-37 (Utah 2002). All 9 elements that I presented are represented and relevant in this case.

15. To successfully allege a claim for common law fraud, a plaintiff must plead each element with specificity and particularity. See, e.g., Baron v. Pfizer, Inc., 820 N.Y.S.2d 841, 12 Misc. 3d 1169(A) (N.Y. App. Div. 2006) (holding that New York law requires a cause of action for fraud be pled with greater specificity than other causes of action (citing Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 57, 720 N.E.2d 892, 898 (N.Y. 1999))); Enyart v. Transamerica Ins. Co., 195 Ariz. 71, 77, 985 P.2d 556, 562 (Ariz. Ct. App. 1998) ("Each element [of fraud] must be supported by sufficient evidence. 'Fraud may never be established by doubtful, vague, speculative, or inconclusive evidence.'" (quoting Echols v. Beauty Built Homes, Inc., 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982))); Liniger v. Sonenblick, 532 P.2d 538, 539-40, 23 Ariz. App. 266, 267-68 (Ariz. Ct. App. 1975) ("Actionable fraud cannot exist without a

concurrence of all essential elements." (citing Nielson v. Flashberg, 101 Ariz. 335, 339, 419 P.2d 514, 518 (1966))); but see Zimmerman v. Loose, 162 Colo. 80, 87-88, 425 P.2d 803, 807 (1967) (concluding that "fraud may be inferred from circumstantial evidence" and that direct proof of reliance is unnecessary to prevail on a common law fraud claim); but see Denbo v. Badger, 503 P.2d 384, 386, 18 Ariz. App. 426, 428 (Ariz. Ct. App. 1972) (reasoning that a party need not allege with particularity whether the party "had a right to rely on representations," because this element is "determined from the very facts alleged" (citing Jamison v. S. States Life Ins. Co., 412 P.2d 306, 3 Ariz. App. 131 (1966))). Notably, "conclusory language" will not satisfy the specificity requirement of a common law fraud claim. Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 184, 65 P.3d 1255, 1265 (Cal. 2003); see Armed Forces Ins. Exch. v. Harrison, 2003 UT 14, 16, 70 P.3d 35, 40 (Utah 2003) (stressing that "mere conclusory allegations in a pleading, unsupported by a recitation of relevant surrounding facts, are insufficient to preclude summary judgment").

16. First Element of Common Law Fraud: A Representation of Fact

The first common law fraud element is the representation of a fact. "A representation within the meaning of the law of fraud is anything short of a warranty, which proceeds from the action or conduct of the party charged, and which is sufficient to create upon the mind a distinct impression of fact conducive to action." St. Louis & S. F. R. Co. v. Reed, 37 Okla. 350, 355, 132 P. 355, 357 (1913); see BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "representation" as "[a] presentation of fact – either by words or by conduct – made to induce someone to act"); see Nielson, 101 Ariz. at 339, 419 P.2d at 518 (reasoning that a defendant's issuance of a certificate purporting to state laden and unladen weight of scrap metal in plaintiff's truck constituted a representation). To successfully plead this element, a

plaintiff "must allege, with specificity and particularity . . . what misrepresentations were made, when they were made, who made the representations and to whom they were made." Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 496-97, 675 N.E.2d 584, 591 (1996) (citing Board of Educ. v. A,C & S, Inc., 131 Ill. 2d 428, 457, 546 N.E. 2d 580, 594 (1989); see DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247, 1987 U.S. App. LEXIS 8319, at *15 (2d Cir. 1987) (noting that allegations of fraud "ought to specify the time, place, speaker, and content of the alleged misrepresentations" (citing Luce v. Edelstein, 802 F.2d 49, 54, 1986 U.S. App. LEXIS 31424, at *12 (2d Cir. 1986))). (the registrant represented the number and mark (1989) as her own mark.

17.    Second Element of Common Law Fraud: Falsity of the Representation

the second common law fraud element is the falsity of the representation. "A false representation is the cornerstone to an action in fraud." Sharp, supra. A representor's "state of mind or intent" can demonstrate the falsity of the representation. Heitman, 638 S.W.2d at 319, 1982 Mo. App. LEXIS 3159 at *5 (reasoning that a representation was true at the time it was made after the speaker acted in conformity with the representation for over eight years); see Nielson, supra (reasoning that "uncontradicted evidence" showing plaintiff's truck was not weighed on some occasions after unloading demonstrated that defendant's representations to the contrary were "false"). (the registrant represented the number (1989) as her own and she knew it was false because the number 1989 is a symbol of the Hindu Arabic numeral system that was invented over 2,000 years ago.



18. The third common law fraud element is the materiality of the representation. "A representation or concealment of a fact is material if it operates as an inducement to the [other party] to enter into the contract, where, except for such inducement, it would not have done so." Prudential Ins. Co. v. Anaya, 78 N.M. 101, 105, 428 P.2d 640, 644 (1967) (quoting Modisette v. Found. Reserve Ins. Co., 77 N.M. 661, 667-68, 427 P.2d 21, 26 (1967); see Colaizzi v. Beck, 2006 Pa. Super 41, ¶ 9, 895 A.2d 36, 40 (Pa. Super. Ct. 2006) ("A misrepresentation is material if it is of such character that if it had not been misrepresented, the transaction would not have been consummated." (citing Sevin v. Kelshaw, 417 Pa. Super. 1, 10, 611 A.2d 1232, 1237 (Pa. Super. Ct. 1992))). The materiality of a representation cannot be inferred from the pleadings, rather, it must be plead with specificity. Benson v. Geller, 619 S.W.2d 947, 949, 1981 Mo. App. LEXIS 2954, at *5-6 (Mo. Ct. App. 1981). The registrant concealed the fact that her mark was the number 1989 of the Hindu Arabic numeral system.

19.  Fourth Element of Common Law Fraud: Representer's Knowledge of the Representation's Falsity or Ignorance of the Truth

 The fourth common law fraud element requires the representer to either have knowledge of the representation's falsity or else be reckless in his ignorance of its truth. "False representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered." Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 974, 938 P.2d 903, 917 (1997) (quoting Yellow Creek Logging Corp. v. Dare, 216 Cal. App. 2d 50, 55, 30 Cal. Rptr. 629, 632 (Cal. Ct. App. 1963); see Anderson v. Knox, 297 F.2d 702, 720-21, 1961 U.S. App. LEXIS 3058, at

*55-56 (9th Cir. 1961) (reasoning that the "knowledge" requirement is satisfied if it is shown that the representations were made with reckless disregard for their truth or falsity); see Nielson, supra (reasoning that a representation purporting to show laden and unladen weight of plaintiff's truck was fraudulent when defendant knew the truck had not been weighed). The registrant knew the representation was false because she took the number 1989 for herself and she admitted live on tv she named her album after her birthday on December 13, 1989.

20. Fifth Element of Common Law Fraud: Representer's Intent to Induce the Other Party to Act on the. "[T]he fundamental character of fraud is the communication of a misimpression to induce another to rely on it." Estate of Schwarz v. Philip Morris, Inc., 206 Or. App. 20, 39, 135 P.3d 409, 422 (Or. Ct. App. 2006). "An unperformed promise does not give rise to a presumption that the promisor intended not to perform when the promise was made." Bash v. Bell Tel. Co., 411 Pa. Super. 347, 361, 601 A.2d 825, 832 (Pa. Super. Ct. 1992) (quoting Fidurski v. Hammill, 328 Pa. 1, 3, 195 A. 3, 4 (1937)). However, "[a] defendant who acts with knowledge that a result will follow is considered to intend the result." Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 578, 2001 Tex. LEXIS 61, at *16 (2001); Elizaga v. Kaiser Found. Hospitals, 259 Ore. 542, 548, 487 P.2d 870, 874 (1971). In this case the (party) is the general public.



## 21. Sixth Element of Common Law Fraud: Injured Party's Ignorance of the Representation's Falsity

If a plaintiff only knows the falsity of some of the elements of a representation, that knowledge will not prevent a finding of fraud based on the concealment of other elements. See Burris v. Burris, 904 S.W.2d 564, 568, 1995 Mo. App. LEXIS 1398, at *9-10 (Mo. Ct. App. 1995) (reasoning that a plaintiff's knowledge of some of the concealed items would not prevent a finding of fraud based on the concealment of others). <u>I figured that a person may not be able to own a number but fearful of a lawsuit shutdown the website I was using to sell the mark 1989 as well.</u>

## 22. Seventh Element of Common Law Fraud: Injured Party's Actual Reliance on the Truth of the Representation

The seventh common law fraud element is the injured party's actual reliance on the truth of the representation. "Actual reliance occurs when a misrepresentation is 'an immediate cause of a plaintiff's conduct, which alters his legal relations,' and when, absent such representation, 'he would not, in all reasonable probability, have entered into the contract or other transaction.'" Engalla, 15 Cal. 4th at 976, 938 P.2d at 919 (quoting Spinks v. Clark, 147 Cal. 439, 444, 82 P. 45, 47 (1905). Markedly, "it is not logically impossible to prove reliance on an omission." Mirkin v. Wasserman, 5 Cal. 4th 1082, 1093, 858 P.2d 568, 574 (1993). Indeed, a plaintiff "need only prove that, had the omitted information been disclosed, one would have been aware of it and behaved differently." I shutdown the site I was selling items with the number 1989 on them, when I saw she was applying for the mark



shutdown my online store in fear of a lawsuit due to the registrants long history of suing people for intellectual property .

23. Eighth Element of Common Law Fraud: Injured Party's Right to Rely on the Representation, this element doesn't apply because a trademark on its surface holds the public's interest.

24. Ninth Element of Common Law Fraud: Injured Party Suffered Consequent and Proximate Injury,

The ninth and final common law fraud element is proof of the injured party's consequent and proximate injury. "It is of the very essence of an action of fraud and deceit that the same shall be accompanied by damage, and neither damnum absque injuria nor injuria absque damnum by themselves constitute a good cause of action." George Hunt, Inc. v. Wash-Bowl, Inc., 348 So. 2d 910, 912, 1977 Fla. App. LEXIS 15920, at *5 (Fla. Dist. Ct. App. 1977) (quoting Stokes v. Victory Land Co., 99 Fla. 795, 802, 128 So. 408, 410 (1930)); Cocchiara, 353 Or. at 299 ("Most notably, a plaintiff will have to prove damages to bring a successful [fraud] claim."); Larsen v. Pacesetter Sys., Inc., 74 Haw. 1, 29, 837 P.2d 1273, 1288 amended on reh'g in part, 74 Haw. 650, 843 P.2d 144 (1992) ("An action based on fraud will not lie where plaintiff has suffered no injury or damage." (citing Hawaii's Thousand Friends v. Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989))). The plaintiff must have incurred the loss "in the type of transaction in which the maker of the representation intends or has reason to expect his or her conduct to be influenced." Ernst & Young, L.L.P., 51 S.W.3d at 577, 2001 Tex. LEXIS 61 at *8-9 (citing RESTATEMENT (SECOND) OF TORTS §



531 (1977)). "It may differ in matters of detail or in extent, unless these differences are so great as to amount to a change in the essential character of the transaction." Id. As I will describe in the next few paragraphs the registrant's fraud caused me to shut down the website I was using to sell products with (1989) on them www.1989shirts.com causing direct harm and loss to me, 1989shirts.com was a physical online store.

25. (Legal Standing) on April 3rd, 2015 I purchased 1989shirts.com from godaddy.com, I was planning on selling shirts that say 1989 on them the Year of my birth, I had noticed that number had become famous in part due to the Registrant im not saying she didn't make the number more desirable but obtained the mark fraudulently , on august 1, 2016 I turned 1989shirts.com into a Physical online store though godaddy.com, but after I noticed the pending trademark for 1989 registration N0. 5380899 shutdown my site in fear of a lawsuit relying on the Registrants fraud that she was legally obtaining the mark(1989), I plan on selling the mark 1989 on shirts in the future but doing so now would infringe apon her generic and fraudulent trademark.

(yardstick rule) the "yardstick" method of showing lost profits. This method, widely approved and used in, antitrust cases (overall a good analogy for non-compete claims), measures the plaintiff's financial performance against a substantially similar business (this comparator being the "yardstick"). Based on that comparison, the plaintiff should be able to draw inferences about how its business would have performed but for the contract breach or fraud (the use of a customer list, diversion of clients, and the like).

14

But gauging the appropriate yardstick - in essence, data sampling – is the trick. Suppose the defendant raids a branch office of the plaintiff. It takes its top three sales employees, steals the customer list associated with that branch office, and causes widespread disruption in the branch's ability to operate day-to-day. The yardstick approach may be a viable candidate to model damages as long as the plaintiff can find a comparison point. But the plaintiff has a lot of work to do to select the right yardstick. The plaintiff would have to run a very intense analysis to show how the comparable location is truly similar in most material respects to the one impacted by the unfair competition.

26. (15 U.S. Code § 1120 - Civil liability for false or fraudulent registration) Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.) once fraud is proven on mark trademark registration N0. 5380899 (1989) (15 U.S. Code § 1120 - Civil liability for false or fraudulent registration) will take full effect over this case herein.

27.  A trademark is a recognizable sign, design, or expression which identifies products or services of a particular source from those of others, although trademarks used to identify services are usually called service marks, A trademark identifies the brand owner of a particular product or service, which (1989) can't identify a brand because it's a symbol of the Hindu Arabic system and an idea and is known as a

number, Terms such as "mark", "brand" and "logo" are sometimes used interchangeably with "trademark". "Trademark", however, also includes any device, brand, label, name, signature, word, letter, numerical, shape of goods, packaging, color or combination of colors, smell, sound, movement or any combination thereof which is capable of distinguishing goods and services of one business from those of others, there's no way to distinguish her goods from others with just a generic number , and besides she filed for the mark (1989) as musically literary works which should have been filed as a (copyright) the mark (1989) in the context she filed for was not her brand but a musical concept.

28. The law considers a trademark to be a form of property. Proprietary rights in relation to a trademark may be established through actual use in the marketplace, or through registration of the mark with the trademarks office, so as of right now she owns the number 1989 of the Hindu Arabic system as her (PROPERTY) which under law is an impossibility.

29.  Strength of Trademarks there are 5 types of trademarks,

1.      Fanciful marks- Fanciful trademarks are made-up words that only mean something in relation to a particular product. This type of mark is the strongest because of its absolute distinctiveness.

2.      Arbitrary marks- Arbitrary trademarks are real words with a meaning that's usually connected with a different class of products. "Apple" is an arbitrary trademark, because it's a real word but the brand relates to computers, not fruit.

3.    Suggestive marks - Suggestive marks are hinting made-up words that suggest a quality of the product. An example is Microsoft, that sells software for computers.

4.    Descriptive marks - Descriptive marks aren't simply suggestive but actually describe the product or service. Companies can't register descriptive marks as trademarks unless these have a secondary meaning.

5.    (Generic marks) like registration N0. 5380899 (1989) Generic marks are the weakest type of marks, and in fact, they can't be registered as trademarks in any case).

Generic terms such as "computer" cannot be registered as trademarks because anyone has the right to use generic words to describe the products they are selling. Giving trademark rights to generic terms would make the English language poorer and would restrict competition. This rule applies to both the principal and the supplemental registers, anyway has a right to use the number (1989).

30. The U.S. Supreme Court said it best. The basic objectives of trademark law are as follows: "[T]trademark law, by preventing others from copying a source-identifying mark, 'reduce[s] the customer's cost's of shopping and making purchasing decisions,' for it quickly and easily assures a potential customer that the this item -- the item with this mark -- is made by the same producer as other similarly marked items that he or she liked (or disliked) in the past. At the same time, the law helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product." Qualitex Co. v. Jacobson Products Co, U.S. Supreme



Court (1995), again 1989 is too generic to be considered for a source-identifying mark.

31.  Trademarks protect consumers from being misled. They ensure free competition by protecting the goodwill of the entity that owns the mark. Unlike copyrights that deal with the marketplace of expressive ideas, trademarks deal with the marketplace of goods and services. A trademark represents the goodwill of a business or a manufacturer or producer. Trademark symbols provide powerful source-identifying cues that allow us to make value judgments about the quality of certain goods before we sample them. For example, when we see (and hear) Leo the Lion and the phrase "Ars Gratia Artis" at the beginning of a motion picture, we immediately associate this trademark with "MGM Studios," home of Garbo, Crawford, Gable Tracy and Hepburn, Mickey Rooney and Judy Garland. Similarly, when you see the distinctive shape of a bottle of "Coca-Cola" you know, without having to read the label, what is in inside, again 1989 misleads and is too generic for federal protection. Generic terms, or common descriptions, receive no trademark protection and may be used with impunity. Giving generic terms trademark protection might unfairly monopolize common speech or set up a barrier to communication.

32. in ending I believe the mark (1989) registration Serial N0. 5380899 must be cancelled due to the fact that the Registrant,


A. filed for a trademark that is too generic.

B. Obtained Fraudulently whole or in part with help of the trademark office specially with help from Won T. Oh Law Office 114, (571) 272 – 9204, won.oh@uspto.gov who granted a complete change to the original specimen on  Nov. 16, 2017.

C.     (1989) is a symbol of the Hindu Arabic system it is both part of a SYSTEM and a IDEA, systems and ideas are not eligible for federal protection, the Registrant has had an unfair competitive advantage for the past 3 years with the number 1989, preventing possibly 1000s of retailers millions of dollars in revenue her being the only one selling the number on products for years.

D.     Trademark (1989) registration Serial N0. 5380899 is Ab initio because it was illegal from the beginning.

E.     (swift) admitted that the Trademark (1989) registration Serial N0. 5380899 was called that because December 13, 1989 was the year she was born naming it after not only the number 1989 but the mark in time (year 1989) both can't be granted federal protection.

F.     I relied apon her fraudulent and generic pending mark now a registered mark that cost me to lose revenue from 1989shirt.com which was a physical online store, the general public also fell for the fraudulent mark because I could not find one single competitor of the number 1989 on any items online meaning (swift) sold millions of items with the number 1989 on them without competition from anyone for years due to her (1989) mark.

G.     On Friday August 18, 2017 she whipped her online store (https://store.taylorswift.com) of all 1989 products and hasn't sold any 1989 products since.

H.     in an application for a variety of clothing items in Class 25 and a variety of leather goods in Class 18, the applicant need only submit a specimen showing use on one clothing item and a specimen showing use on one leather good.  The applicant may then file a statement of use for all goods on which the mark has been used without additional proof of use.  In so doing, the applicant must take care, however, to

19

delete from the statement of use any clothing items or leather goods on which the mark has not been used.  If the applicant does not delete such items, it is fraud, as the Board has concluded in a long line of cases [2] starting with Medinol Ltd. v. Neuro Vasx, Inc., 67 U.S.P.Q.2d (BNA) 1205, 1206 (T.T.A.B. 2003). The Registrant has ceased selling items with the number 1989 including class 18 and 25 I'm not aware of such items being sold when the registrant was selling item with that mark on it with is (Fraud).

I.      As with a statement of use, the Board has held that the filing of a Section 8 affidavit for items on which the trademark is not being used is (fraud), and renders the registration vulnerable to cancellation.  See Jimlar Corp. v. Montrexport S.P.A., 2004 TTAB LEXIS 333, at *20 (June 4, 2004) (not citable as precedent), mark registration N0. 5380899(1989) was filed for Metal key chains, Sunglasses; cases for mobile phones; carrying cases specially adapted for electronic equipment, namely, mobile phones and mobile computers, Jewelry; bracelets, Stationery; blank journals; lithographs; art prints; photographs; posters; stickers and decalcomanias; decals; notebooks, Backpacks; handbags; tote bags; all-purpose carrying bags, Pillows, Beverageware; drinking glasses, namely, tumblers, Towels; beach towels; blanket throws; bed blankets; bed linen; household linen; pillow covers, Clothing, namely, jackets, coats, bandanas, headwear, caps, hats, gloves, scarves, sweatshirts, hooded pullovers, shirts, t-shirts, jerseys, footwear, and tops for children and adults; shoes, Christmas tree ornaments and decorations; battery-activated toy LED light sticks, Retail and on-line retail store services featuring paper goods, household linens, home furnishings, cosmetics, toiletries, clothing, jewelry, key chains, bags, collectibles, memorabilia, toys, printed publications, and printed materials, many of these items where never sold on her website with makes the mark (FRAUDULENT),

J.      In its rulings in each of these cases, the Board has essentially read the "intent" element out of the standard for establishing fraud, instead of holding trademark owners strictly liable for any false statements that were made in any allegations of use.  The Board's position is that the trademark owner has the obligation to know whether the trademark is being used on the items listed in the allegation of use.  See J.E.M. Int'l, Inc. v. Happy Rompers Creations Corp., 74 U.S.P.Q.2d (BNA) 1526 (T.T.A.B. 2005) (not citable as precedent) (trademark owner knew or should have known that its mark had not been used on approximately 100 of the 150 clothing items listed in the statement of use); Hawaiian Moon, Inc. v. Doo, 2004 TTAB LEXIS 274 (Apr. 29, 2004).


 Relief


     Principal 376,000 US dollars, for loss of revenue I was fully prepared to sell 200 shirts that say (1989) a week at 20 dollars each (15 for shirt, 5 for shipping) a week since August 1, 2016 the opening of my online store 1989shirts.com with was 94 weeks ago,

94 weeks x 20 dollars a shirt x 200 shirts a week (376,000) dollars net loss of revenue - Punitive Damages- I'm requesting 275x times the principle for the defendant committing fraud against the trademark office and for her massive wealth exceeding 450,000,000 dollars a grand total of 103,400,000 million Dollars, the defendant made nearly 400,000,000 off the fraudulent mark (1989) registration N0. 5380899 and the (1989) World Tour alone.

     Total relief requested 103,400,000 million dollars as of the week of 5/25/2018.

Punitive Damages- Punitive damages are an established practice of American common law, traditionally assessed against defendants in civil cases to punish past misconduct and to deter future misconduct. But because they have become more frequent in recent verdicts, they have received increased attention. The major issue today is no longer whether defendants should pay punitive damages; it is well-settled that punitive damages are appropriate in certain circumstances, as both a matter of law and policy. Instead, current controversy focuses on what is the appropriate amount of punitive damages that should be awarded and how that amount should be calculated.

punitive damages serve the dual purposes of punishing the defendant and deterring similar conduct in the future. See, e.g., Michelson v Hamada (1994)29 CA4th 1566, 1593, 36 CR2d 343; Las Palmas Assocs. v Las Palmas Center Assocs. (1991)235 CA3d 1220, 1243, 1 CR2d 301 ("punitive damages are not awarded for the purpose of rewarding the plaintiff, but to punish the defendant"); Kaye v Mount La Jolla Homeowners Ass'n (1988)204 CA3d 1476, 1493, 252 CR 67; Dyna-Med, Inc. v FEHC (1987) 43 C3d 1379, 1387, 341 CR 67 (punitive damages "serve but one purpose—to punish and through punishment, to deter"); Castaic Clay Mfg. Co. v Dedes (1987)195 CA3d 444, 450, 240 CR 652; Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928 n13, 148 CR 389. Accordingly, punitive damages should not be greater than the amount necessary to accomplish these goals. Weeks v Baker & McKenzie (1998)63 CA4th 1128, 1166, 74 CR2d 510; Michelson v Hamada (1994)29 CA4th 1566, 1593, 36 CR2d 343; Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928 n13, 148 CR 389 ("the function of punitive damages is not served by an award which, in light of the defendant's wealth and the gravity of the particular act, exceeds the level necessary to properly punish and deter").

The deterrence justification for punitive damages is motivated by two objectives: (1) to deter the specific defendant in the case from repeating or continuing his, her, or its offensive behavior and (2) to deter, generally, other potential parties from committing similar offenses. See Restatement (Second) of Torts §908. This rationale of deterrence is especially strong in cases in which other measures of civil damages, and the unlikely prospect of criminal prosecution, are together insufficient to prevent an individual or entity from engaging in a wrongful act. Indeed, absent the fear of punitive damages, a defendant may have little incentive to discontinue the unlawful or harmful conduct.

The defendant's wealth is an important part of the punitive damages equation. In Las Palmas Assocs. v Las Palmas Center Assocs. (1991)235 CA3d 1220, 1243, 1 CR2d 301, the court stated:

While in the ordinary action for damages information regarding the adversary's financial status is inadmissible, this is not so in an action for punitive damages. . . . The relevancy of such evidence lies in the fact that punitive damages are not awarded for the purpose of rewarding the plaintiff but to punish the defendant. Obviously, the trier of fact cannot measure the punishment without knowledge of defendant's ability to respond to a given award.



A defendant's financial condition has always been relevant to the amount of punitive damages allowed. As the California Supreme Court explained in Adams v Murakami (1991)54 C3d 105, 113, 284 CR 318.

Because punitive damages are intended to punish the wrongdoer, a wealthy wrongdoer should face a higher punitive damages award than a less wealthy party. Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928, 148 CR 389 ("the function of deterrence . . . will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort").

While mandated percentage "limits" on a punitive damage award have drawn criticism, awards in excess of these limits have also drawn objection. Again, using California as an example, courts have generally found punitive damages greater than 15 percent of a defendant's net worth to be excessive. Little v Stuyvesant Life Ins. Co. (1977)67 CA3d 451, 469, 136 CR 653; see also Michelson v Hamada (1994)29 CA4th 1566, 1595, 36 CR2d 343 (award equal to 28 percent of defendant's net worth is excessive). Awards greater than 30 percent of a defendant's net worth are often rejected as excessive. Merlo v Standard Life & Acc. Ins. Co. (1976) 59 CA3d 5, 18, 130 CR 416 (punitive damages equal to 30 percent of defendant's net worth are excessive); Zhadan v Downtown L.A. Motors (1976)66 CA3d 481, 500, 136 CR 132 (punitive damages equal to one-third of defendant's net worth are excessive).

Some insight on this issue is provided in the Supreme Court decision in TXO Prod. Corp. v Alliance Resources (1993) 509 US 443, 125 L Ed 2d 366, 113 S Ct 2711, in which the Court broadened its view of what ratio

between actual and punitive damages is permissible. The Court upheld a $10-million punitive damage award that accompanied an actual damage award of only $19,000—a ratio of 526 to 1. Quoting Haslip, the Court declared that, "We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that [a] general concer[n] of reasonableness . . . properly enter[s] into the constitutional calculus." 509 US at 458, 125 L Ed 2d at 379.

In arriving at its decision in TXO, the Court focused on "whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred." 509 US at 460, 125 L Ed 2d at 380. [Emphasis in original.] The Court concluded that the high punitive damage award was reasonable because TXO's actions could have caused millions of dollars of damages to other victims. 509 US at 460, 125 L Ed 2d at 380.

37. <u>CONCLUSION</u>

<u>Return the Number (1989) back to the public domain, by cancelling Trademark (1989) Registration N0. 5380899 for being too Generic and obtained Fraudulently due to the fact the Registrants mark is identical to the number (1989) a symbol of the Hindu Arabic system it is both part of a SYSTEM and a IDEA, systems and ideas are not eligible for federal protection, 1989 is also a mark in history which the registrant admitted on live television that her mark was named after the year 1989 the year she was born and for listing products in the statement of use that was never sold by the defendant which is (fraud)( The applicant may then file a statement of use for all goods on which the</u>

mark has been used without additional proof of use.  In so doing, the applicant must take care, however, to delete from the statement of use any clothing items or leather goods and other such goods on which the mark has not been used.  If the applicant does not delete such items, it is fraud, as the Board has concluded in a long line of cases [2] starting with Medinol Ltd. v. Neuro Vasx, Inc., 67 U.S.P.Q.2d (BNA) 1205, 1206 (T.T.A.B. 2003) on December 6th 2017 Natalya L. Rose the defendants trademark lawyer filed an amendment to trademark registration N0. 5380899 even though the defendant cleaned her website of all 1989 appeal on august 18, 2017 a full 3 months and 20 days before the amendment change to (1989) before the registration was granted on January. 16, 2018 (clear Fraud)( with Medinol Ltd. v. Neuro Vasx, Inc., 67 U.S.P.Q.2d (BNA) 1205, 1206 (T.T.A.B. 2003) and grant both-Principal 376,000 US dollars for loss of revenue, and the Punitive amount of 103,400,000 million dollars 275x times the principal for the defendant committing fraud against the USPTO and for her net worth accumulated from the Fraud enacted.

## Table of Contents for Exhibits

Exhibit A - Proof of the purchase of 1989shirts.com online store.

Exhibit B – Amendment made to the statement of use of (1989) trademark registration N0. 5380899 made 4 months after all 1989 products where taken off (https://store.taylorswift.com/)

Exhibit C - timeline of all the documents submitted by T.A.S. management for the mark (1989) registration N0. 5380899.

Exhibit D – Proof of Registered Agent for T.A.S. management

Exhibit E – Taylor Swift's social media accounts go dark Chicago Tribune article proof of the last time she sold anything with (1989) on it. Proving fraud.

ADless 1760 Glen laurel Drive middu 13419 FL 32068

(26)

IN THE UNITED STATES FEDERAL COURT MIDDLE DISTRICT OF FLORIDA

In the matter of trademark registration N0. 5380899

Registration Date January 16, 2018

Mark: "1989"

Daniel James Silva

Plaintiff,

Against          Case number_____

TAS RIGHTS MANAGEMENT, LLC

Defendant.

Certificate of Mailing

I hereby certify that on May 25, 2018 I filed a Federal Lawsuit in

IN THE UNITED STATES FEDERAL COURT MIDDLE DISTRICT OF FLORIDA

And sent the (official summons) though registered mail to -  Continue
to next page,

**Registered Agent of TAS Rights Management, LLC**

**Agent Name:  C T CORPORATION SYSTEM**

**Agent Address:  300 MONTVUE RD**

**KNOXVILLE, TN 37919-5546 USA**

**And also, a copy (without summons) to TAS Rights Management, LLC**

**718 THOMPSON LN STE 108256**

**NASHVILLE, TN 37204-3600 USA**

Daniel James Silva  PRO SE _____ Date: 5/25/2018

