1

```
 1              IN  THE  UNITED  STATES  DISTRICT  COURT
                   MIDDLE  DISTRICT  OF  FLORIDA
 2                    JACKSONVILLE  DIVISION

 3               CASE  NO.:   3:18-cv-688-J-34JRK

 4   DANIEL  JAMES  SILVA,              Jacksonville,  Florida
                 Plaintiff,
 5        -vs-                          August  16,  2018

 6   TAS  RIGHTS  MANAGEMENT,  LLC,     2:22  p.m.  -  3:58  p.m.
                 Defendant.
 7                                      Courtroom:   5D
```

8   _____

9               **DIGITALLY  RECORDED  MOTION  HEARING**
             BEFORE  THE  HONORABLE  JAMES  R.  KLINDT
10               UNITED  STATES  MAGISTRATE  JUDGE

11   A P P E A R A N C E S

12   **DANIEL  JAMES  SILVA,  Pro se**
     1760  Glen  Laurel  Drive
13   Middleburg,  FL   32068

14   COUNSEL  FOR  DEFENDANT:
     (via  speakerphone:)

15

16   **JAMES  DOUGLAS  BALDRIDGE,  ESQ.**
     **KATIE  M.  WRIGHT,  ESQ.**
17   Venable,  LLP
     600  Massachusetts  Ave,  N.W.
18   Washington,  DC   20001

     **JESSE  SCHAUDIES  ESQ.**
19   TAS  Rights  Management,  LLC
     in-house  Counsel.
20

21   OFFICIAL  COURT  REPORTER:

22   Cindy  Packevicz  Jarriel,  RPR,  FCRR
     221  N.  Hogan  Street,  #128
23   Jacksonville,  FL   32202
     E-mail:   cindyrprfcrr@gmail.com
24

25       (Proceedings  recorded  by  electronic  sound  recording;
     transcript  produced  by  computer.)

```
 1                    P R O C E E D I N G S
 2    August 16, 2018                              2:22 p.m.
 3                          -  -  -
 4         (Court called to order.)
 5              THE COURT:  Good afternoon, everyone.
 6              MR. SILVA:  Hello, Your Honor.
 7              THE COURT:  Let me call --
 8              MR. BALDRIDGE:  Good afternoon, Your Honor.
 9              Doug Baldridge on the phone.
10              THE COURT:  Yes, sir.
11              Let me call the case and then I'll have you-all
12    announce your appearances.
13              This is Daniel James Silva against TAS Rights
14    Management, LLC, Case No. 3:18-cv-688-J-34JRK.
15              So, Mr. Silva, you're present in court, sir?
16              MR. SILVA:  Yes, sir.
17              THE COURT:  All right.  Good afternoon.
18              MR. SILVA:  How are you, sir?
19              THE COURT:  Fine, thank you.
20              You may be seated.  Thank you very much.
21              And, Mr. Baldridge, if you'd go ahead and announce
22    your appearance and announce who's with you, please.
23              MR. BALDRIDGE:  Yes, sir.
24              This is Doug Baldridge on behalf of the defendant,
25    TAS.
```

1          I'm on one phone.  On another phone is my colleague,

2     Kathryn Wright.  And then on yet another phone is our client,

3     the general counsel and manager of TAS, Mr. Jesse Schaudies.

4               THE COURT:  All right.  Good afternoon to all of you.

5               I set this case for a hearing on defendant's motion

6     for protective order, Document 22, that was filed on July 31st,

7     2018, and required Mr. Silva to appear here personally -- and,

8     of course, he's here -- and allowed counsel for the defendant

9     to appear via telephone.

10              Mr. Silva did file a response to the motion for

11    protective order.

12              In the meantime, however, I believe just today,

13    earlier today --

14              MR. SILVA:  Yes, sir.

15              THE COURT:  -- Mr. Silva filed what is titled

16    Supplement.  It's Document 32 in the -- on the docket.

17              Let me just ask you, Mr. Baldridge, have you had a

18    chance to review the latest filing?

19              MR. BALDRIDGE:  Yes, sir, I have.

20              THE COURT:  All right.  Mr. Silva, let me ask you a

21    question --

22              MR. SILVA:  Yes, sir.

23              THE COURT:  -- if I may.

24              MR. SILVA:  Actually, I have a statement I would like

25    to -- Judge, to the Court, if I may?

1          THE COURT:  Well, I had a question for you first.

2   But are you going to cover your supplement when you make your

3   statement?

4          MR. SILVA:  Yes, sir.

5          THE COURT:  All right.  Well, Mr. Baldridge, I

6   think -- my thought is -- and Mr. Silva -- that we should deal

7   with this supplement before we get to the motion for protective

8   order.

9          And although it's labeled Supplement, Mr. Silva does

10  ask for relief or -- on the last page, so I would be inclined

11  to hear from Mr. Silva at this time before getting to the

12  protective order.

13         And that's what you'd like to do, Mr. Silva?

14         MR. SILVA:  Well, actually, I didn't realize they'd

15  file it so fast, because I was going to read the first part of

16  it.

17         And then obviously through, you know, the fraudulent

18  nature of the mark, and now all this is finished of being that

19  obviously anybody present knows the conclusions, I would like

20  to still read the section -- I mean, to be honest -- I

21  apologize, Your Honor.  I have never been in a court with

22  experience.

23         THE COURT:  Could I just interrupt you?  And I don't

24  mean to --

25         MR. SILVA:  Yes, sir.

1          THE COURT:  -- I have a bad habit of interrupting,

2     but if you'd -- if you'd indulge me.  I'll let you go ahead and

3     make a presentation in just a minute.

4          But let me ask Mr. Baldridge, do you have any

5     objection to proceeding the way I've proposed?

6          MR. BALDRIDGE:  Sir, I have no objection to

7     proceeding the way you proposed.

8          I do have specific requests in response to the

9     supplement that was just filed.

10         THE COURT:  All right.  Well, what would your

11    requests be with regard to that?

12         MR. BALDRIDGE:  Well, specifically, as I understand

13    the supplement that Mr. Silva just filed, he is seeking at the

14    end to dismiss his case for the reasons stated therein.

15         Although I can tell you we are highly sympathetic and

16    empathetic to Mr. Silva and his plight that he has described in

17    the supplement, we would ask that, pursuant to Rule 41, that

18    this case be dismissed with prejudice, not without prejudice,

19    as it has been a lingering issue in all of our lives for some

20    time.

21         And I think the Court has authority under either

22    41(a)(2), as it being a second dismissal, or, B, for violation

23    of court rules to do so with prejudice.

24         And the second request I would make is that before

25    dismissing it, that the Court please enter some form of relief,

1   whether it be in the form of a protective order or a TRO, that

2   mandates Mr. Silva to cease any further communication or

3   contacts with my client or any of its related parties, or with

4   my law firm, for the reasons we have briefed.

5           We don't need to discuss those reasons.  They're

6   before the Court.

7           And, again, I stress, we are quite sympathetic to

8   Mr. Silva's situation, but it remains a substantial obstacle

9   and impediment to our daily business activities, and we would

10  ask for that relief.

11          MR. SILVA:  May I respond, sir -- Your Honor?

12          THE COURT:  Let me just address Mr. Baldridge, and

13  then I'm going to hear anything you have to say.

14          MR. SILVA:  Yes, Your Honor.  Thank you.

15          THE COURT:  I'm not in any hurry this afternoon.

16          MR. SILVA:  Me either.  Well, that's what I was -- I

17  have a lot here, so trust me.

18          Thank you, sir, Your Honor.

19          THE COURT:  All right.  That's good.

20          We'll take it a step at a time.

21          We can -- we can discuss the Rule 41 issues, if it's

22  appropriate, at a certain point in time, because -- and I -- at

23  some point, I do want to clarify with Mr. Silva exactly what he

24  means that he believes his current case must be thrown out.

25          And I'll clarify with him at some point if what he is

1   doing is essentially filing a notice of dismissal pursuant to

2   Rule 41(a)(1)(A)(i).

3          And then we can have a discussion about -- about

4   whether it would be deemed with or without prejudice.

5          Of course, that would be something that ultimately

6   Judge Howard would decide, but we could have a discussion about

7   that and what the rule says about it.

8          But before it's clear that that's what Mr. Silva is

9   asking --

10          MR. SILVA:  No, sir.

11          THE COURT:  -- I think -- let me just -- let me just

12   finish with Mr. -- addressing Mr. Baldridge's position.

13          We could have a further discussion about that.  And

14   it may be that -- that that will have to be addressed in

15   writing.

16          And then we can also take up -- we can also take up

17   the other matter that you addressed, Mr. Baldridge.

18          MR. BALDRIDGE:  Yes, sir.

19          THE COURT:  So let me go ahead and hear from

20   Mr. Silva at this time.

21          MR. SILVA:  Well, sir, Your Honor, obviously it's

22   been the third case now and, obviously, the first I didn't know

23   what I was doing.

24          And as time progressed, it's been 14 months and

25   three cases in, I have gotten better at it, because I don't

1   have a half million dollars in this case, but I do have several

2   documents here that I would like to show the Court.

3          They're basically two that the mark 1989 is

4   fraudulent.

5          I have here two trademarks.  One called TS 1989, and

6   the second called 1989.

7          So basically both of them, if you go to

8   (unintelligible).

9          So basically -- she basically lists -- well,

10  actually, I'll read what -- because I believe she

11  misrepresented mark -- trademark 1989.

12         And the definition of misrepresentation is:

13  Misrepresent, falsify, belie, share the sense of presenting

14  information in a way that does not accord with the truth.

15         Misrepresent usually involves the deliberate

16  intention to deceive, either for profit or advantage.

17         A dealer mis -- a dealer misrepresented the condition

18  of a car.

19         Or to distort.  Implied a purposeful twisting or

20  emphasizing of certain statements so as to produce an

21  inaccurate or misleading impression.

22         Cleverly distorting the facts to create a question of

23  his or her -- or the Court.

24         But also "falsely" suggests tampering or altering of

25  facts, records, or documents, especially intent to cheat or

1    deceive.

2              He falsified the birth records to conceal his age.

3              There's also "belie," which means to create an

4    impression that is inconsistent with the facts or contradict

5    other evidence, but does not usually suggest intent to deceive.

6              Her casual, relaxed manner, belies her insecurity.

7              And I also have here -- so basically on 10-27-2014,

8    the defendant released an album -- it became known as 1989, but

9    I have here on her -- basically, this is her website, TS 1989,

10   Your Honor, and also the picture of the disc that says TS 1989.

11             So I have here basically -- oh, also I have principal

12   registrations for both.

13             So basically she received the trademark for TS 1989

14   in 2013, which was the name of the album.

15             And now she basically, you know, misrepresented the

16   mark 1989 as her album, which it is not.

17             There's a lot of documents here to prove that.

18             And also the lawyer -- I'm sorry.  The lawyer that

19   filed all the trademarks for some reason was either let go or

20   fired from an old firm, because he changed his address here.

21             So basically -- all the evidence here basically prove

22   that 1989 is not her mark.  And actually one last thing before

23   obviously it belies (unintelligible).

24             I have a Supreme Court case from 1896 called *Singer

25   Manufacturer versus June Manufacturer* [verbatim].

1        And this is the closest case I could find to this

2   case particularly.

3        So I'll read it out loud.  It was arbitrated

4   October 16 to 17, 1894, and it was decided May 18, 1896.

5        And it goes:  The Singer-made machines were covered

6   by patents, some fundamental, some accessory, whereby they were

7   given to them a distinct character and form which caused them

8   to be known as Singer machines.

9        The word "Singer" was adopted by Singer & Company.

10       So first they had two initials in front of the name

11  Singer, and then once they eventually were known as Singer,

12  they just went by Singer.

13       Just like, say, if you were to go to TS 1989, and

14  then dropped the TS to be known as 1989.

15       Patents were covered -- gave the manufacturer of

16  Singer sewing machine a substantial monopoly whereby the Singer

17  came to indicate the class and type of machines made by the

18  company or corporation, and constitute their generic

19  description, and conveyed to the public mind the machines were

20  made by them.

21       On the expiration of the patent, the right -- the

22  patent article -- to use a generic name passed to the public

23  with a dedication resulting from the expiration of the patent.

24       On expiration of the patent, one who uses generic

25  name or generic number in a number, sir -- Your Honor, by which

1   articles manufactured under it are known, may be compelled to

2   indicate the articles made by him or are made by him and are

3   not -- I apologize.  I lost my place.

4       The judge later went on to say:  Where, during the

5   life of monopoly created by a patent or a name -- which the

6   name 1989 was -- if be arbitrary or be that inventor has become

7   by his consent, either express or tacit, the identifying and

8   generic name of the thing patented, this name passes to the

9   public with cessation of the monopoly which the patent created,

10  and where another avails himself to the public dedication to

11  make the machine and use the generic designation.

12      He can do so in all forms, with fullest liberty, by

13  affixing such name to the machine by referring to them in

14  advertisement and by other means, subject, however, to the

15  condition that the name must so be used as not to deprive

16  others of their right or to deceive the public, and therefore

17  the name must be accompanied with such indicators that the

18  thing manufactured is a work of the one making it -- the

19  manufacturer making it -- will unmistakenly inform the public

20  of that fact.

21      THE COURT:  All right.  Now, Mr. Silva -- thank you.

22      MR. SILVA:  Thank you, Your Honor.

23      THE COURT:  You did say that you were going to

24  address the supplement also.

25      MR. SILVA:  Yes, Your Honor.

1    THE COURT:  Would you -- would you like to address

2    that at this time?

3    MR. SILVA:  Basically, Your Honor, I would like to

4    read basically -- okay, Your Honor.  I would read the -- all

5    right.  I'll read the section, Your Honor, that you've already

6    read it.

7    I'd like to -- the one that obviously pertains most

8    probably, I think, to the case, is the effects of PTSD on the

9    hippocampus.

10    The most significant neurological impact of trauma is

11    seen in the hippocampus.  PTSD patients show a considerable

12    reduction of volume of the hippocampus.

13    This region of the brain is responsible for memory

14    functions.  It helps an individual to record new memories and

15    to retrieve them later in response to specific and relevant

16    environmental stimuli.

17    The hippocampus also helps us distinguish between

18    past and present memories.

19    PTSD patients who reduce -- with reduced hippocampi

20    volume lose the ability to dis-- I'm sorry.

21    THE COURT:  Discriminate.

22    MR. SILVA:  -- discriminate between past and present

23    experiences or correctly interpret environmental context.

24    The particular neural mechanisms involved trigger

25    extreme stress responses when confronted with environmental

1   situations that only remotely resemble something from their

2   traumatic past.

3           For example, this is why a sexual assault victim may

4   be terrified of parking lots, because she was once raped in a

5   similar place.

6           So basically -- basically, I wouldn't -- I wouldn't

7   put it past that I'm legally mentally insane, but it does not

8   mean that the defendant did not, you know, commit fraud.

9           And I would -- when you said -- you know what I meant

10  by missing -- or throwing out, which means a person who is

11  insane cannot -- once the Court finds out they are insane, they

12  can't continue.

13          So I'm not -- I didn't say throw it out, I said just

14  you can't -- you know, a person who is technically -- is

15  mentally insane, can't -- you know, like, if they're doing

16  fine, basically.

17          They've got me now without prejudice, because I

18  believe that, you know, my plan is, you know, accurate.

19          It's just that, you know, I have a lot of pain in my

20  life that made me go insane.  But it's not to say that the

21  defendants did not take -- also, number 1989 is a symbol of the

22  Hindu Arabic numeral system, and is both a system and idea,

23  which are not granted under federal protection in the United

24  States.

25          And also -- you can use a number in reference to a

1  brand, even if she stated -- she stated basically on live

2  television that being -- because of being born on December 13,

3  1989, the album is called 1989, which means she basically

4  stated that the album is -- as the number.  So it is not

5  granted federal protection.

6             Basically that's where that's at.

7             So I'd like to get therapy, and then, you know,

8  obviously probably find counsel.  Or if not, make sure that a

9  person with a PhD, you know, says that I'm sane.  And then,

10 obviously, I would like to retry my case under sane conditions,

11 Your Honor.

12            THE COURT:  What I was trying to determine,

13 Mr. Silva, is what you're asking is to voluntarily dismiss your

14 case --

15            MR. SILVA:  No, Your Honor.

16            THE COURT:  I didn't finish.

17            MR. SILVA:  Oh, I apologize.

18            THE COURT:  Thank you.

19            If you want to voluntarily dismiss your case without

20 prejudice at this time, if that's what you were attempting to

21 do.

22            MR. SILVA:  Your Honor, I was attempting to state

23 that an insane person cannot file a lawsuit, because even if

24 he's righteous in his cause, he's insane.

25            So nothing he says can be taken -- you know, cannot

1   be used to grant relief.

2              Oh, also, by the way, the *Singer* case, the person

3   ended up -- Singer ended up having to give profit to the person

4   who filed the S trademark, being identical to this situation.

5              So thank you, Your Honor.

6              But that's not it, Your Honor.  I did not say -- I

7   did not say, you know, throw it out.  Basically I meant that

8   being that I'm mentally insane, or, per chance, that I am,

9   under all the conditions, that I cannot continue this case

10  because my mental condition and my health.

11             THE COURT:  Well, Mr. Silva, in a civil case like

12  this, the Court isn't in a position to determine whether you're

13  sane or insane, or competent or incompetent, to proceed.

14             In criminal cases, that's something that the Court

15  takes up, but not in civil cases.

16             And whether you are competent or incompetent at this

17  point is something that a state court would have to decide

18  regarding your mental status.

19             So what we need to do here is -- is decide exactly

20  how to proceed with your case, and that's why I thought you

21  were asking --

22             MR. SILVA:  Well, I mean --

23             THE COURT:  Can I just finish, please?

24             MR. SILVA:  I apologize.

25             THE COURT:  Then I'll hear anything you have to say.

```
1              MR. SILVA:  Thank you, Your Honor.

2              THE COURT:  Of course.

3          That if you were moving to voluntarily dismiss your

4    case under Rule 41, without prejudice, you would be attempting

5    to procedurally be in a posture, once you felt you were

6    confident to proceed, to bring your case again.

7              Now, of course, Mr. Baldridge has made a point that

8    there are some circumstances under which -- under which your

9    case could be dismissed with prejudice if that happened.  And

10   we have to discuss that more fully.

11             And I suppose -- and, Mr. Baldridge, you can weigh in

12   on this, but you may have other options, too, that you think

13   would be appropriate, given what Mr. Silva has said.

14             And you know what "with prejudice" means, means you

15   can't bring --

16             MR. SILVA:  Yes, it can't be retried.

17             THE COURT:  Yes.

18             MR. SILVA:  Unless you basically have to do a whole

19   bunch of loops -- loop de loos to get a retrial.

20             Basically, Your Honor -- basically, I'm mentally

21   insane, so I don't think I can legally -- I don't think I can

22   legally throw it out to, you know, decide my rights under

23   the -- you know what I mean?

24             So -- and I believe that any case law under civil law

25   needs to be decided by a judge or jury or it has to be without
```

1   prejudice.

2          THE COURT:  All right.  So let me try to clarify one

3   more time with you -- and I'm just asking you if this is what

4   you intended.  I'm not trying to bind you to anything right

5   now.

6          I'm just trying to figure out what you meant by this

7   when you stated or when you -- where you state on the last page

8   of your supplement:  I, Daniel James Silva, am currently

9   mentally insane due to my severe untreated PTSD, among other

10  conditions, and my current case must be thrown out without

11  prejudice due to the fact I can't continue this case mentally.

12          Is that -- are you asking that your case be dismissed

13  without prejudice until you have --

14          MR. SILVA:  Yes, Your Honor.  Without prejudice until

15  I'm deemed sane to continue.

16          May I add something, Your Honor?

17          THE COURT:  Yes, of course.

18          MR. SILVA:  I can see that if it was just like, you

19  know -- you know, I just want to sue her for a hundred million

20  dollars because, you know, she owes me money for a

21  (unintelligible), but, you know, I had 1989 shirts I was trying

22  to sell.

23          Also, I actually have -- give me a second, Your

24  Honor -- if I -- so basically she was granted the mark -- the

25  fraudulent mark, I should say, on -- I believe the beginning of

1   the year.

2              So I have here, Your Honor, U.S. Trademark Rule of

3   Practice in Federal Statutes, January 1st, 2018.

4              So you go to Section 2.33, Verified Statements for a

5   Trademark is certified.

6              And you go to B-1.

7              An applicant -- under Section A-1 of the act, a

8   verified statement must allege that the applicant believes that

9   they're the owner of the mark; that the mark is used in

10  commerce; that to the best of the signatory's knowledge and

11  belief, no other person has the right to use the mark in

12  commerce.

13             But being that -- you know, if I were -- so basically

14  if I were to sell shirts with 1989, basically the trademark

15  prevents me from doing that, which prevents -- takes 1989 out

16  of the public domain and infringes upon my constitutional

17  right, freedom of expression, which I believe is covered under

18  the First Amendment.

19             The right to use the mark in commerce, either in

20  identical form -- which is the number 1999 [verbatim], or in

21  such near resemblance as to likely, when applied to the goods

22  or services of such other people or person, to cause confusion

23  or mistake, or to deceive.

24             So obviously that -- the mark 1989 does all that.

25             Oh, also -- Section 2 of that also is to bona fide.

1    She lacks the bona fide intent to (unintelligible).

2           So also what the U.S. trademark laws defines as

3    fraudulent:  Commerce can involve the misrepresentation of

4    material facts made by -- with intent to deceive or a state of

5    mind -- okay, I'll stop -- so reckless disrespecting

6    consequences to -- as to the equivalent of intent, where there

7    is justifiable reliance on admissions or representations by the

8    party deceived, inducing the party to act therefore of

9    [verbatim].

10          So basically, I shut down my online commerce store,

11   believing that she was going to get the mark, and she did.

12          Fraud also may be established by a preponderance,

13   omission, or failure to state a material fact, which states --

14   she did not state this -- the number 1989 is a Hindu Arabic

15   ruler system, which is an idea or system -- where submission or

16   failure to state make other statements misleading, and there

17   were elements of justifiable reliance and injury are

18   established.

19          And that's page 140.

20          And then section -- page 232, Statutory note 15,

21   1120, Fraud Liability.

22          Any person who shall procure registration in the

23   patent and trademark office of the mark by any false or

24   fraudulent declaration, representation, oral or in writing, or

25   by any false means, shall be liable in a civil action by any

1  person each for -- thereby for any damages sustained and the

2  consequence therefore of [verbatim].

3          So basically my thought process behind my lawsuit was

4  that she'd made around $450 million off the fraudulent mark

5  1989, but I believe you cannot take more than 30 percent of

6  their net -- well -- but, also being that it's fraudulent

7  requires punitive damages.

8          So basically my base principal -- well, net loss, 350

9  grand, which is reasonable considering she's made $400 million

10 off of it, and then it's worth $500 million, it has to cause

11 discomfort.  So I was figuring in the neighborhood of between

12 80 -- or 90 million and 120 million.

13         And obviously being that the mark is fraudulent,

14 which I relied upon, it all makes sense.

15         Being that I'm insane at the moment, it doesn't

16 matter.  No.  The case must get thrown out.

17         Oh -- oh, there's also 67 other trademarks with the

18 number 1989 in them.  So that's a lot of trademarks with the

19 same number, I think.

20         Let's see here.

21         All right.  So, yeah, obviously, you know, a person

22 can't extort something that's owed to them by law.

23         So thank you, Your Honor.  That's pretty much it for

24 now.

25         THE COURT:  Well, Mr. Silva, let me address --

1  address it this way.  And then I'll, of course, hear from

2  Mr. Baldridge.

3          You have essentially asked the Court -- or you

4  have -- you have essentially announced or told the Court that

5  your intention is to voluntarily dismiss your case without

6  prejudice as to all claims.

7          Mr. Baldridge, as you heard, believes it should be

8  without prejudice -- with prejudice.

9          I have a -- having clarified what you said, that your

10  case should be thrown out is your attempt to request a

11  voluntary dismissal, I do have a form that is in the form of

12  Notice of Voluntary Dismissal that states that you voluntarily

13  dismiss without prejudice all of your claims.

14          And if you -- if you do want to voluntarily dismiss

15  your case without prejudice, then the appropriate way to do

16  that would be to execute this notice so that it's clear what

17  you mean by "thrown out."

18          MR. SILVA:  But you --

19          THE COURT:  Let me -- let me finish.  I'm going to

20  hear from you.

21          You can see today I'm going to hear whatever you have

22  to say.

23          MR. SILVA:  Thank you, Your Honor.  (Unintelligible.)

24          THE COURT:  And then Mr. Baldridge would be given an

25  opportunity to file a motion asking that it be with prejudice,

1  because there are parts of the rule that allow it to be with

2  prejudice.

3        But that would be the course of action that the Court

4  would intend to take right now to recognize what you wish to

5  do, but the Court has to hear what the defendant thinks of

6  that.

7        MR. SILVA:  Well, I've already dismissed one case

8  without prejudice, so, I mean, if you do it twice under the

9  same circumstances, does it not matter?

10       THE COURT:  Well, the question, I think, would be --

11 there are two ways -- as Mr. Baldridge pointed out, there are

12 two basic ways under the rule it could be with prejudice.

13       One would be if the Court found that the previously

14 dismissed federal or state action was based on or included the

15 same claims, then it would be considered an adjudication on the

16 merits.

17       I'm not -- I'm not in a position to say whether it's

18 the same claim.  I've looked at a couple of different things.

19       One is I know there's a different defendant name, so

20 I don't know if that affects the claim.  And this is something

21 that Mr. Baldridge would address in any motion he would file.

22       And then just taking a quick look at this, I know

23 that the trademark numbers are different.  Because the

24 trademark in the case -- the first case you dismissed without

25 prejudice is a different number than this one.

 1          I can't sit here and tell you if that makes a

 2   difference or not, but Mr. Baldridge would have the opportunity

 3   to address that.

 4          And so that would be one way possible your case could

 5   be dismissed with prejudice if the Court found that.

 6          And then there is the other matters that

 7   Mr. Baldridge raised just about what he's basically stated in

 8   the motion for protective order and your general conduct, for

 9   lack of a better way of putting it.

10          MR. SILVA:  Well, but I'll --

11          THE COURT:  Take your hand away from your mouth.

12          Go ahead.  Thank you.

13          MR. SILVA:  I mean, I don't think there's been any

14   improper conduct since the hearing set.  Because in my mind, I

15   was already -- my rights were already violated by, I think, the

16   Fourteenth Amendment, in both previous cases, so I figured it

17   was going to happen again.

18          And being that I'm a poor person, or of common means,

19   I didn't have money to buy it.  So in my mind, you know, the

20   illusion of a crime is not a crime.

21          THE COURT:  Well -- but let's get back to the point,

22   though.

23          If you want to voluntarily dismiss your case without

24   prejudice --

25          MR. SILVA:  Again, it's not the case -- you're right.

1    So obviously on the record, it's a different person.  So then

2    obviously it's not the same.

3             So then if I were to refile, it would be without

4    prejudice, because it's with a different person.

5             So after considering that --

6             THE COURT:  Well, just a second, though.

7             I'm not telling you that's the case.  I'm just saying

8    that those would be the issues.

9             Because this -- this rule doesn't specifically

10   address whether it has to be the same party or a different

11   party.

12            What I'm telling you is that you -- if you filed a

13   notice of voluntary dismissal, dismissing without prejudice,

14   then as I read the rule --

15            MR. SILVA:  Can you read it, Your Honor?

16            THE COURT:  The rule?

17            MR. SILVA:  Yes, Your Honor.

18            THE COURT:  Yes.  This is -- and I have a copy for

19   you --

20            MR. SILVA:  Thank you, Your Honor.

21            THE COURT:  -- here somewhere.

22            Just give me one second.

23            Let me hand that to you.  Thank you.

24            I know Mr. Baldridge had a copy of the rule because

25   he referred to it.  So we can read it together.

1          Do you want to read it yourself or do you want me to
2    read it with you?
3          MR. SILVA:  You can read it, Your Honor.
4          THE COURT:  Well, Rule 41 is titled:  Dismissal of
5    Action.
6          A, Voluntary Dismissal; 1, by plaintiff; a, without a
7    court order.
8          And then it says:  Subject to these other rules,
9    23(e), 23.1(c), 23.2, and 66, and any applicable federal
10   statute, the plaintiff may dismiss an action without a court
11   order by filing, one, a notice of dismissal before the opposing
12   party serves either an answer or a motion for summary judgment.
13         That's what I interpreted your supplement is doing.
14         And then --
15         MR. SILVA:  Yes, Your Honor.
16         THE COURT:  -- you skip 2, because that's a
17   stipulation of dismissal.
18         And then B, Effect.  Unless the notice or stipulation
19   state otherwise, the dismissal is without prejudice.
20         But if the plaintiff previously dismissed any federal
21   or state court action, based on or including the same claim, a
22   notice of dismissal operates as an adjudication on the merits,
23   which is basically a way of saying with prejudice.
24         MR. SILVA:  What's the definition of a claim, then?
25         THE COURT:  Well, that would be, I'm guessing, based

```
1   on what Mr. Baldridge said, would be the subject of his motion
2   asking that it be with prejudice.
3           Because your filing of the notice under
4   Eleventh Circuit law is essentially self-effectuating.  I mean,
5   it's -- under --
6           MR. SILVA:  Being it's a difference -- being, like I
7   said -- like you said the first time was a different person,
8   how does that affect it?
9           THE COURT:  What I said before is I don't know the
10  answer to that right now.
11          MR. SILVA:  Okay.  Okay.  I get you.  I get you.
12          THE COURT:  This was -- you know, it was --
13          MR. SILVA:  Obviously, I understand, Your Honor.
14          THE COURT:  -- sprung on a little quick.  And I'm --
15          MR. SILVA:  That's the rule I was trying to avoid
16  dismissing it again.
17          I mean, you know, I'm very experienced.  When you
18  practice something 15 months, you might as well be
19  (unintelligible), but...
20          THE COURT:  I meant self-executing when I said that
21  before.
22          MR. SILVA:  Okay.
23          THE COURT:  So let me -- let's do this.
24          You -- let me hear from Mr. Baldridge.  The way
25  this -- the way this basically shapes up, no one can stop you
```

1   from filing a notice of voluntary dismissal.

2           And -- and -- and as the rule says, the notice of

3   dismissal, unless the notice or stipulation states otherwise,

4   the dismissal is without prejudice.

5           So that's the basic assumption.

6           But then there's the next line that follows, and

7   that's part of what Mr. Baldridge is stating that he

8   believes -- and I can -- I'll ask him to confirm this, but I

9   think he's believing that regardless of the party and

10  regardless of the trademark number, his position would be that

11  it is the same claim.

12          So let's both of us let Mr. Baldridge address that.

13          All right.  Thank you.

14          Mr. Baldridge?

15          MR. BALDRIDGE:  Yes, sir.

16          If I am hearing the Court correctly, the preferred

17  course of action would be for us to proceed with a writing

18  addressing the very issue you've just outlined.

19          I will take that position that the matter before

20  Judge Schlesinger, when it was dismissed on July 13th, 2017,

21  constituted and included the same claim, and therefore, under

22  41(a), it would be an adjudication on the merits.

23          That is a matter that obviously we cannot and you

24  cannot advise Mr. Silva on what the outcome is.

25          We will, you know, file it when the time comes, and

1    the Court will, of course, determine what the outcome is.  But

2    we would, indeed, take that position.

3             The secondary position, as you've noted, Your Honor,

4    would be a 41(b) position.  And that would be the rules

5    violation that we feel, in fact, is a separate basis for

6    dismissing the action with prejudice.

7             And the third basis would, of course, be the merits

8    themselves.

9             Respectfully, Mr. Silva has not alleged anything that

10   constitutes a meritorious claim.  And we would be willing to

11   brief that on the merits.

12            But I would ask the Court's indulgence to put off any

13   response deadline on the merits of his brief until we have

14   handled the Rule 41 issue, which may resolve everything and we

15   can do it at cost during the merits briefing at this time,

16   especially given that he is in some way expressing his interest

17   in dismissing the case without prejudice, at least.

18            I would also add, and our staff has researched this,

19   but I believe it's the case, that when Mr. Silva puts a

20   supplement in the record this afternoon, that it was

21   self-executing.

22            Whether or not he mentioned 41(a) or not, he has now

23   dismissed this case, in his mind without prejudice, and

24   therefore that will trigger the adjudication on the merits

25   along with 41(a), but that probably remains an issue at a later

1   date when we briefed it.

2          THE COURT:  Well, as to whether -- whether this is --

3   the statement by Mr. Silva in this case must be thrown out is

4   essentially a notice of voluntary dismissal under 41 is

5   something that you could take up if you -- if you wish to.

6          It wasn't clear to me, because the words "thrown out"

7   suggests, in my mind at least, when I first -- when I first

8   read that was that he wanted somebody else to throw it out and

9   he wasn't throwing it out himself.

10          MR. SILVA:  True, Your Honor.  If I may --

11          THE COURT:  And given that he's pro se, at least my

12   inclination if I were called upon to weigh in on it would be

13   that there had to be clarified, and that's why I'm trying to

14   clarify it at this point in time.

15          So I think that it's ambiguous enough that I

16   wouldn't -- wouldn't deem it a voluntary dismissal under 41,

17   given Mr. Silva's pro se status.

18          And then any -- any motion on the merits, of course,

19   would be separate from what we're talking about now.

20          And I think even a 41(b) request would be -- would be

21   separate and apart from what I'm focusing on at this point in

22   the supplement, which is 41(a)(1) -- 41(a)(1)(A)(i), so that --

23   because there are different showings that have to be made with

24   this.

25          Of course, we do recognize, and it does -- it would

1   appear that there would have to be some sort of finding that no

2   lessor sanctions, dismissal with prejudice would be -- would be

3   available or suffice.

4          So I really, at least at this point, in talking about

5   what the next step is, I'd like to focus on 41(a)(1)(A)(i), and

6   clarify with Mr. Silva exactly what he intends to do.

7          MR. SILVA:  Well, next, like I said, Your Honor, I'd

8   like to clarify that "thrown out" in my terms meant that the

9   judge would have to throw it out because of my insanity, not

10  because I was (unintelligible).

11         It was just my way of thinking.  You know, because I

12  did it pro se, I forget -- I forgot, you know, every word is

13  taken to its literal meaning.

14         And also I'd like to add, the defendant lawyer said

15  that there's no merit, but as of the date that's registered,

16  it's a third-degree felony -- it would be a third-degree felony

17  to sell a shirt with the number 1989 on them.

18         I have the record somewhere.

19         So it prevents me from selling shirts with the year

20  of my birth, which denies my constitutional right of freedom of

21  speech and people respecting me.

22         So there is definitely merit there.  Maybe not

23  applies to the registration, like the date of registration and

24  then the third-degree felony.

25         The Counterfeit Act of 1984 prevents me from -- and

```
 1   also, even having a domain name -- I have it right here
 2   somewhere -- even having a domain name similar, such as 1989
 3   shirts are common also -- I don't want you to think that
 4   there's no merit, because there definitely is.
 5            And then, like I said, Your Honor, "thrown out" meant
 6   that you would obviously have to throw it out because of my
 7   mental insanity and not a voluntary purpose.
 8            THE COURT:  Well, Mr. Baldridge, given what Mr. Silva
 9   has just said, what other options do you believe are available
10   in terms of how the Court handles his -- I know you said you
11   view this as a notice of voluntary dismissal.  Mr. Silva
12   essentially states otherwise.
13            So what do you have to say to that?
14            MR. BALDRIDGE:  First of all, Your Honor, I think,
15   briefing -- I think the case -- let me break this down.
16            I think what Mr. Silva is saying until now in his
17   mind, without prejudice, the case is concluded.
18            That would be the first point or effect.  So we put
19   aside whether it's with or without prejudice.  I think to stop
20   the case is what he's saying right now.
21            When we get to the second issue, is it with
22   prejudice, I think we have to brief the issue.
23            First of all, is the filing of this document a
24   self-executing act that falls within 41(a)?
25            And I understand the Court's inclination, and I
```

1   understand Mr. Silva's inclination is to essentially seek an

2   advisory opinion that what he's doing isn't hurting himself

3   under 41(a).

4           But I think we would need to brief that issue, the

5   41(a) issue, to see whether it's with or without prejudice.

6           Not whether it's to be dismissed, because I think

7   he's saying:  I want to walk away from this right now, is what

8   I'm hearing.

9           And that doesn't mean he's not going to come back.

10  I'm not putting words in his mouth.  So I think we would need

11  to brief that.

12          If you want to go on to the other arguments, there

13  is, of course, the 41(b) argument that I would put a marker

14  down on, and we don't need to get into that right now, that

15  kind of bleeds into the protective order issue.

16          And then I would also say, third, against the merits,

17  respectfully, there is no merit in the case.  There is no legal

18  merit in the case.

19          I'm hopeful that we don't have to repeat our

20  arguments once again, but there is a wholesale way to get rid

21  of this case as well on the merits.

22          Again, I would ask the Court to put off that deadline

23  until we deal with the 41(a) issue, which I think is actually

24  before the Court.

25          THE COURT:  Well, here's -- well, let me interrupt --

1   let me interrupt you, because you've said what you've said now

2   three times.

3          So let me ask you this, is there anything that the

4   Court can do, if the defendant is claiming he's incompetent,

5   and I can -- and the Court doesn't interpret this as a

6   voluntary dismissal under 41, is there anything that the

7   Court -- that the Court can do -- that is, the plaintiff -- I

8   might have said defendant; I meant plaintiff.  Is there

9   anything the Court can do?

10          I mean, doesn't the case just go on if this isn't a

11   Rule 41 dismissal, and he says he's incompetent, doesn't the

12   case just go on and -- in this court?

13          MR. SILVA:  I have to work, Your Honor.

14          THE COURT:  Just a minute.

15          MR. SILVA:  I'm sorry.

16          THE COURT:  Just a minute.

17          I'm talking to Mr. Baldridge.

18          Do you know a basis for dismissing the case because a

19   plaintiff is incompetent?  If there is --

20          MR. BALDRIDGE:  I cannot say that in 32 years of

21   practice I have ever confronted the issue, so I don't -- I

22   don't know the answer in a civil court.  I don't know that it's

23   ever come up.

24          So the answer is I don't know.

25          THE COURT:  Because -- because in terms of where we

```
1   are with Mr. Silva, only a state court could adjudicate him
2   incompetent or insane, whichever it would be.
3            Do you agree with that?
4            MR. BALDRIDGE:  I think that's correct.
5            I think the Court could acknowledge, without finding
6   that he's incompetent, that he has decided he doesn't want to
7   proceed at this point.
8            THE COURT:  Well, that's the equivalent of a
9   voluntary dismissal.
10           MR. SILVA:  Can I give a suggestion?
11           When you -- can I get a couple months to get, you
12  know, could you -- could you disregard the supplement?  And
13  then, it's not -- it's not titled a motion to dismiss.
14           Could you disregard it and then give me, like, three
15  to five -- maybe three months -- to keep it going for three
16  months, and then within three months, I can get the therapy I
17  need to be, you know, mentally competent, please?
18           Because it is -- it is the filing supplement.
19  Obviously I still have to research, you know, filings and such.
20           I have a quick question, Your Honor.
21           If the mark 1989 is all -- if the mark 1989 is
22  trademarked, is owned by the defendant, and then I decide to
23  sell shirts that says 1989, wouldn't that not be
24  counterfeiting?
25           THE COURT:  Well, Mr. Silva, as I told Mr. Baldridge,
```

1  I've appreciated what you and he have both said about the

2  merits of the case, but the hearing wasn't set for the merits.

3          MR. SILVA:  Okay.  I understand, Your Honor.

4          But basically, can you -- can you disregard the

5  supplement, and then extend -- give me a couple months to

6  recover from my insanity?

7          Because PTSD is reversible, which is actually stated

8  in that -- the PhD doctor stated that it is reversible, so

9  technically it's temporary insanity.

10         So being that I cannot proceed due to health

11 concerns, can you just give an extension, a 90-day extension,

12 and then we could continue it from there?

13         I mean, I wouldn't mind continuing the case -- like,

14 right now, it's just healthwise, it's not there.

15         I do believe it merits, basically -- could you just

16 extend it for 90 days and we could pick it up from there?

17         THE COURT:  Well, let me just go back to this.

18         So you're -- you, at this point, do not -- let me ask

19 it this way.  At this point, do you wish to voluntarily dismiss

20 your case without prejudice?

21         MR. SILVA:  No, I don't.

22         I would like to continue the case at a later time

23 when a doctor has verified me sane to continue the case.

24         So is there any law stating how long the case could

25 go for?

```
1              THE COURT:  Just one moment.

2              Well, the -- at this point, I'm not in a position --

3    I don't have the authority to stay the case that you're asking

4    me to do at this point.

5              You would have to file a motion to that effect and

6    ask that the case be stayed.

7              MR. SILVA:  So it's called -- what's the motion

8    called?

9              THE COURT:  It would be motion to stay.

10             MR. SILVA:  Well, what -- I mean, theoretically, what

11   would I have to state in that?

12             THE COURT:  Well, I can't -- I can't advise you on

13   what to say, but you've already said it, so I'll just repeat

14   back to you what you said to me.

15             What I heard was that at this point, you don't feel

16   mentally competent to proceed in your case, and you would like

17   90 days to try to restore your competency so that you can

18   litigate your case.

19             That's what I heard you say.

20             MR. SILVA:  That is -- that is correct.  I do not

21   feel -- it is the word "thrown out," you know, it's definitely

22   not, you know, it's dumb.

23             So I thought -- right when I filed it, I thought -- I

24   thought because I was mentally insane, that it couldn't be

25   changed, but obviously if you're mentally insane, how can you
```

1   continue the lawsuit?  That doesn't make any sense.

2          And obviously, being that I don't have the

3   documentation in front of me, but if, you know, I do have some

4   CIPs, so let's just say that, you know, what it comes down to,

5   if Mr. Baldridge had to, he would say motion to dismiss

6   because, you know, the plaintiff is mentally insane.

7          So it's not something that he would have filed at the

8   last case in the hearing, anyway.

9          So basically -- could I file the motion to stay now?

10         Oh, no wait a minute.

11         I mean, I'm just -- I do not want to dismiss my case

12   without prejudice.  I want to continue the case.

13         But like I said, I'm not mentally competent at this

14   time.  That's not to say that in three months I could not be

15   deemed sane.

16         So that's where we're at.  I did not want to.  After,

17   you know, I mean, like -- I do not wish to dismiss the case.

18         THE COURT:  Well, as I just said -- told you that I

19   didn't -- I interpreted your supplement as you asking the Court

20   to dismiss your case, but it wasn't clear; it was ambiguous.

21   Because Mr. Baldridge's interpretation of it is a different one

22   that someone could have also.

23         That's why I tried to clarify with you whether you

24   wanted to dismiss your case without prejudice.

25         You basically told me that you did, but then when you

1   heard Mr. Baldridge say that he's going to try to make it with

2   prejudice, then you decided that that isn't what you want to

3   do.

4           So -- so in my mind, you have now said that this

5   supplement is not a request or a motion under Rule 41 to

6   voluntary dismiss the case.

7           MR. SILVA:  It's not.

8           THE COURT:  And given that, Mr. Baldridge, I see

9   that -- that issue as having been decided.

10          So that this -- I'm not interpreting the supplement

11  to be a motion to voluntarily dismiss the case without

12  prejudice, and Mr. Silva has so stated.

13          So let's do this.  We'll talk a little bit more about

14  whether you're going to file the motion to stay, because I

15  don't have the authority to stay the case.

16          But let's get to what we are here for now, which is

17  the motion for protective order.

18          And Mr. Baldridge addressed it briefly, and as he

19  said, what he's filed speaks for itself.

20          So, Mr. Silva, let me address some things to you.

21          MR. SILVA:  Yes, Your Honor.

22          THE COURT:  The first thing I want to do is I want to

23  compliment you on how you have conducted yourself today.

24          Because you have been very respectful.  The language

25  you have used has been appropriate.  And although you think

1    that you are incompetent at this time, you have conducted

2    yourself in a way that -- that the Court would expect of

3    someone litigating a case in federal court.

4         And you have demonstrated that you have the

5    discipline and the ability to control your behavior and conduct

6    yourself in a way that's very exemplary.

7         MR. SILVA:  Thank you, Your Honor.

8         THE COURT:  So I want to tell you that I appreciate

9    how you've conducted yourself.

10        You've interrupted me a couple times, but I've

11   interrupted you, too.

12        So -- and here's my point, though, that I want to get

13   to is that I've read your filing, what you filed -- and I'm not

14   going to go through it.  I've read every single thing that you

15   filed.  And I've read e-mails that you have sent to opposing

16   counsel in the case.

17        And when I read these things and then I see you come

18   in here and conduct yourself the way you do, it looks like

19   two different people to me.

20        I would never believe that this is you writing these

21   words and saying these things.  Because -- because what -- the

22   things that you have said -- and I'm talking about using

23   profanity; I'm talking about making comments that may not --

24   they may border on threatening, but they're very inflammatory.

25   And maybe some could be viewed as threatening, those aren't

1  appropriate and they don't do anything to help your case, and

2  they're truly viewed as harassment by the Court and obviously

3  by defense counsel.

4          And if you, in writing, conduct yourself the way you

5  have in court here, then that would be appropriate.  And that's

6  really what you should be doing.

7          One of the things that's critical in court is -- is

8  civility.  And so you have to -- you're going to have to

9  conduct yourself on paper the way you've conducted yourself

10  here, because all of these things distract from your case.

11          And so let me just take -- can you do that?  Can you

12  control yourself and do that?

13          MR. SILVA:  Yes, Your Honor.

14          But could I state, also -- see, the thing is that I

15  do have -- I do have -- PTSD affects the memory.

16          The reason the name Daniel Kelter is the one sending

17  it, you could argue that, you know -- you could argue that, you

18  know, how that proves that I was the one that sent it.

19          THE COURT:  No, I'm not -- look, I'm not trying to --

20          MR. SILVA:  I realize that.

21          THE COURT:  I'm not trying to prove anything.

22          MR. SILVA:  I know.

23          THE COURT:  You know, you --

24          MR. SILVA:  It's frustrating, Your Honor, because

25  it's been three cases in 14 months, and I didn't even get a

1  hearing.

2          And then, I mean, you're -- I can tell why -- I can

3  see why you're a federal judge, because, you know, federal

4  stands for top-notch, you know, you have to go to the bench

5  school.

6          And you look at some of the cases nowadays where if

7  you know -- you help to get the president elected, you're

8  facing 300 years.  And if you teach children to shoot up the

9  schools, you get released on a $20,000 bond.  You know what I

10  mean?

11          But, I mean, I can see that you're a fair and

12  impartial judge.  And, you know, I'm actually very happy that,

13  you know, you're able to arbitrate over this, because you've

14  definitely showed exemplary, you know -- I can see why you're a

15  federal judge, Your Honor.

16          THE COURT:  Well, I appreciate that.  But let's get

17  back to one thing that I want to clarify.

18          You just mentioned someone else's name and then --

19          MR. SILVA:  Who --

20          THE COURT:  You're the one writing these.

21          MR. SILVA:  Oh, well, what I'm saying is, Your Honor,

22  that, you know, it says that PTSD, you know, you can't remember

23  what you did the next day.

24          And, plus, specific names on the e-mails, so, I mean,

25  technically if it was, you know -- if it went to trial, it

42

1   would be, probably, hearsay.

2            And also, Your Honor, I'm an identical twin, so any

3   rule supporting or whatnot --

4            THE COURT:  Mr. Silva --

5            MR. SILVA:  I apologize.  You're right.

6            THE COURT:  Okay.  Okay.  There's not going to be --

7   there's not a trial on this.

8            MR. SILVA:  Okay.

9            THE COURT:  This is just --

10           MR. SILVA:  Obviously there's been no -- basically,

11  the inappropriate communications was to force a hearing,

12  because, as you can see, this is third case, 15 months in, and

13  I've be denied my 6th and 14th amendment.

14           You can see that it's a problem.

15           And I was afraid the case was thrown out because

16  Judge Howard received the misogynistic comments I made.

17           And even if they were in my heart, they were

18  definitely sent to -- emotionally stressed.  And I was

19  (unintelligible).

20           Obviously, you know, if she would have seen them,

21  let's just say I would not have been granted a hearing.  So...

22           THE COURT:  Well, you know that -- that you filed a

23  motion to recuse and --

24           MR. SILVA:  Oh, actually, Your Honor, please, can

25  you -- there's actually a motion for -- motion for -- give me a

1    second, Your Honor.

2            Declaratory -- I filed a declaratory judgment.

3            Do you think you could answer that?

4            THE COURT:  You know, I -- when did you file that?

5            MR. SILVA:  I filed it -- there's four documents I

6    filed at the same time.  So it's an automatic time.

7            So it's basically a declaratory stating, you know,

8    is, like, trademark 1989, the number 1989.

9            Because if it's proven that the mark 1989, that is --

10   so basically, maybe the merits -- I'm not sure if I can prove

11   merits, but I can definitely prove the fraudulent nature of the

12   trademark, because she misrepresented 1989 at her album.

13           And, actually, to be honest, I have principal

14   registries -- I actually have -- she basically used the same

15   specimen for both trademarks.  So I mean, I could definitely

16   show you that, if you want.

17           Basically, I wanted to be able to sell the number

18   1989 on a shirt without it being a felony.

19           So can you -- give me a second, Your Honor, I've got

20   to flip through some things.

21           Just basically, you know, the declaratory judgment is

22   this mark, the number 1989 of the Hindu Arabic dual system,

23   which is both system and an idea, and systems and ideas are not

24   granted under the federal protection [verbatim].

25           So if they could at least -- if we can at least get

1   to where if the mark is fraudulent or not, I'd be very pleased.

2   Because obviously it's taken the number 1989 out of public

3   domain.

4           And I -- like *Singer* in 1896, which it says -- it

5   says generic name, but it's basically, I would say, pretty

6   close to the same thing.

7           MR. BALDRIDGE:  Your Honor?  Your Honor?

8           THE COURT:  Just -- yes, sir.

9           Just one minute, Mr. Silva.

10          MR. BALDRIDGE:  May I be heard?  I don't want to --

11          MR. SILVA:  Yeah, you can go.

12          Go ahead, Mr. Baldridge.

13          MR. BALDRIDGE:  I appreciate that, Mr. Silva, but I

14   think Your Honor has to let me.

15          THE COURT:  Mr. Silva, that -- that is my job.

16          MR. SILVA:  I apologize.

17          THE COURT:  That's all right.  I appreciate you

18   trying to help.

19          Go ahead, Mr. Baldridge.

20          MR. SILVA:  All right.  I got to run through some

21   stuff, anyway, so give me a second.

22          THE COURT:  Go ahead, Mr. Baldridge.

23          MR. BALDRIDGE:  Yes, sir.

24          There were four things filed on the date, to answer

25   your question.

1          It was the opposition to motion for protective order,
2    so an item that Mr. Silva called a supplement.
3          There was a motion to recuse Judge Howard.  And there
4    was a motion for declaratory judgment.
5          As to the latter, the motion for declaratory
6    judgment, there is no such thing.  I filed a two-sentence
7    brief.
8          It has to be through the pleading process of the many
9    complaints.
10         I realize that this individual is proceeding pro se,
11   but it can't be acknowledged by the Court at this point as a
12   motion for declaratory judgment.
13         The motion to recuse, there's no basis stated in it
14   to recuse the judge.
15         It's the equivalent of saying:  I did bad things, so
16   the judge may think badly of me, so therefore the judge can't
17   rule.
18         That's no recognized basis for recusal.
19         But what I'd like -- hopefully like to do is get us
20   back to where we started, and that is the conduct of Mr. Silva
21   that we've briefed in the motion for protective order.  We seem
22   to have gotten back on the merits, and I'm hopeful that we can
23   address that.
24         THE COURT:  Yes.  That -- I do have the motion --
25   thank you for that, Mr. Baldridge.

 1              By the way, someone hung up.  Can you let me know

 2    who's still on the phone.

 3              MR. BALDRIDGE:  My guess is Mr. Schaudies hung up

 4    because he had another call.

 5              MS. WRIGHT:  Yes.

 6              MR. BALDRIDGE:  Yes, sir.  Me and Ms. Wright are

 7    still on the phone.

 8              THE COURT:  All right.  Thank you.

 9              Mr. Silva, again, I appreciate your argument.

10              I do have the motions for declaratory judgment --

11              MR. SILVA:  Thank you, Your Honor.

12              THE COURT:  -- and the response.

13              It's Document 25 that was filed on August 3rd.

14              And that -- that will be something that Judge Howard

15    will take up.  So she'll be considering that, along with the

16    other motions that you filed.

17              So let's get back to the main reason we set this

18    hearing.

19              MR. SILVA:  Yes, Your Honor.

20              THE COURT:  And that is -- and that is to address the

21    protective order.

22              I think -- I think to bring some -- some clarity to

23    where things are going to be, that -- that I am going to enter

24    a protective order in the case.

25              MR. SILVA:  All right, Your Honor.

1    THE COURT:  And, essentially, I'll put that in

2  writing.  But number one on the list will be that any

3  communications that you have with the other side, all of the

4  defendants, will be with Mr. Baldridge.

5    There's no reason for you to be in contact with

6  anyone else on the defense side.

7    Any defendant -- the defendant or anybody who works

8  for the defendant, they're called a represented party.  And

9  even if -- even if a lawyer were sitting where you are, they

10  couldn't contact the company.  That would be a violation of the

11  code of ethics.

12    MR. SILVA:  Okay.

13    THE COURT:  So when you're in a lawsuit and a party

14  like the defendant here has a lawyer, that's the only person

15  you can communicate with.  You can't communicate with anybody

16  else who is employed by the company or affiliated companies,

17  only with defense counsel.

18    MR. SILVA:  Okay.  What about -- I was only

19  contacting (inaudible).  I wasn't going --

20    THE COURT:  Well, okay.

21    But you understand what I'm saying?

22    MR. SILVA:  I understand, Your Honor.

23    THE COURT:  All right.  I appreciate that.

24    And the writing with him should be in writing.  It

25  should be e-mails or letters between the two of you.

```
 1                    MR. SILVA:  Okay.

 2                    THE COURT:  Is that -- that will be part of the

 3      order.

 4                    And then I've already talked to you about the types

 5      of statements, the inflammatory statements, the improper

 6      statements and anything that could be involved as a threat.

 7      Stick to the facts of your case in this case.

 8                    You know the facts well.  You have obviously

 9      researched the law.  Don't get distracted with calling people

10      names and talking about how you're going to destroy this or do

11      that.  You don't need to do that.  You should stick to the

12      facts of your case and the procedure here.

13                    Look how well prepared you were today.

14                    MR. SILVA:  Thank you, Your Honor.

15                    Well, because halfway -- half your courtroom is

16      papers.

17                    THE COURT:  Well, but if -- that's the way it would

18      look if a lawyer were sitting there.

19                    MR. SILVA:  Maybe I could be a lawyer.

20                    THE COURT:  Well, you have to go to law school for

21      that.

22                    MR. SILVA:  Yes, sir, Your Honor.

23                    THE COURT:  But -- and so you have to --

24                    MR. SILVA:  Oh --

25                    THE COURT:  Let me finish.
```

1              MR. SILVA:  I apologize.  I apologize.

2              THE COURT:  Or I'll forget.  I can be forgetful on

3      these things.

4              MR. SILVA:  All right.

5              THE COURT:  So you should conduct yourself like you

6      have conducted yourself today.

7              Your language has been appropriate.  You have been

8      respectful, but you have argued your position vigorously and

9      you've stated it well.  And that is how anything that you do in

10     this case should be.  In writing, or when you're in court

11     addressing anyone, this is how -- this is how you should

12     conduct yourself.  And, as I said, you -- it's been exemplary

13     today.

14             MR. SILVA:  Thank you, Your Honor.

15             THE COURT:  And you know what will happen in the

16     case, I'll read everything that's filed and I'll see if you're

17     complying with the order that I enter on this that's going to

18     basically capture what I've just told you.

19             So I really do expect -- and I want to tell you this,

20     and this is just reality.  You heard Mr. Baldridge say that if

21     you use inappropriate language -- and I'm not going to use some

22     of the words -- I can look at your face and you know what I'm

23     talking about -- that those -- that type of language and making

24     things that could be interpreted by someone as a threat, and

25     generally harassing people, can result in your case being

1    dismissed as a sanction, with prejudice.  That is a

2    possibility.

3           And so that's why I wanted to have a hearing.  I

4    wanted to meet you.  I wanted to see you.  And I was hoping --

5    I have to tell you, I was hoping that you would conduct

6    yourself exactly the way you have today, because -- because it

7    lets me know that you can do it.

8           And it's essential for you to do it.

9           Look, it -- you have the right to bring this lawsuit

10   and you've brought it, but you have to conduct yourself within

11   the rules and the requirements of the decorum of the court, and

12   you've shown you can do it.

13          MR. SILVA:  Thank you, Your Honor.

14          Can I -- may I say something, too?

15          THE COURT:  Yes.  Yes, of course.

16          MR. SILVA:  So do you have copies of the trademark,

17   by any chance?

18          THE COURT:  You have filed those, haven't you?

19          MR. SILVA:  Okay.  Well, the thing is, is that I was

20   looking at 15 U.S. Code 1052, trademarks registerable on

21   principal register, and it says, number A, consists of immoral,

22   deceptive, or scandalous matters.

23          So obviously -- this is the number 1989, so that's

24   deceptive, so wouldn't that automatically make the mark

25   fraudulent?

```
1                THE COURT:  Well, again, you're asking me something
2      that I'm not able to answer, and it's not my position at this
3      point to rule on that.
4                MR. SILVA:  Okay.  Let me see, now.
5                THE COURT:  Let me address Mr. Baldridge --
6                MR. SILVA:  Okay.
7                THE COURT:  -- at this point.
8                Mr. Baldridge, I would intend to grant your motion
9      for protective order.  And essentially the order will include
10     the specific matter that I just discussed, the matter contained
11     in your specific relief requested.
12               I wanted to add this, too.  I think that this is an
13     appropriate case for us to -- to forego the Local Rule 3.01(g)
14     requirement of the parties conferring prior to the filing of a
15     nondispositive motion, because I think that that will limit
16     the -- what would be likely to cause some contention in the
17     case.
18               Do you -- Mr. Silva, do you know what rule I'm
19     talking about?
20               MR. SILVA:  Could you explain, Your Honor?
21               THE COURT:  Yes, sir.
22               The rule that requires the lawyer -- if it's a lawyer
23     or the party on one side to contact the other side when they're
24     going to file a motion, tell them what the motion's going to be
25     and then ask if the person opposes it or not.
```

1          MR. SILVA:  Okay.

2          THE COURT:  And I just think in this case, it's best

3  to dispense with that rule and just you -- if you have a motion

4  to file, you file it, you don't have to call Mr. Baldridge and

5  ask him if he opposes it.  Then he'll have a chance to file

6  something.

7          If he does oppose it, he'll file a response in

8  opposition.  If he doesn't oppose it, he'll file something

9  saying that he doesn't oppose it.

10          MR. SILVA:  Okay.

11          THE COURT:  Mr. Baldridge, I think that will work

12  best in this case.

13          MR. BALDRIDGE:  I think that's a good suggestion,

14  Your Honor.  Thank you.

15          MR. SILVA:  All right.  So -- Exhibit 17.  Pictures

16  of my family.

17          And in the lawsuit, I do state that -- well, I mean,

18  I guess I can just tell you the story, and I think that that --

19  it should be -- I think --

20          Okay.  This is going to be hard because -- okay.

21          So anyway --

22          MR. BALDRIDGE:  Your Honor, may I -- may I

23  short-circuit this, if possible?

24          I don't want to interrupt Mr. Silva.

25          THE COURT:  Mr. Silva, let's hear what Mr. Baldridge

1   is going to say.  It may affect what you're going to say.

2          Yes, sir.  Please.  Thank you.

3          MR. BALDRIDGE:  Yeah, the e-mail Mr. Silva sent us

4   included pictures of his nieces.  I don't have any objection

5   whatsoever to the Court redacting that.

6          The obvious point was to show the communications, not

7   to show pictures of his family.  And if he wishes that to be

8   redacted, that's perfectly acceptable.

9          MR. SILVA:  I agree.  Thank you, Mr. Baldridge.

10         THE COURT:  All right.  Is that what you'd like?

11         MR. SILVA:  Yes.  Because, like I said, it's just --

12  I get, you know, the defendant does have like, you know, crazy

13  fans, that jump over walls and going through the houses.

14         I think one even broke into her house, cooked food,

15  and slept in her bed.

16         So I definitely don't need pictures, you know,

17  obviously.  So 17, I definitely would like to be redacted, Your

18  Honor.

19         THE COURT:  All right.  Just one minute.

20         All right.  That's exhibit --

21         MR. SILVA:  17.

22         THE COURT:  Exhibit 17, attached to Document 22, the

23  defendant's motion for protective order?

24         MR. SILVA:  Yes, Your Honor.

25         THE COURT:  All right.  So what I'll do is -- what

1   I'll do is direct that the clerk seal Exhibit 17 so it won't be

2   in the public record.

3           MR. SILVA:  Thank you, Your Honor.

4           THE COURT:  All right.  Thank you, Mr. Baldridge.  I

5   think that was where Mr. Silva was going.

6           MR. SILVA:  Yes.  Most important, family.

7           THE COURT:  All right.  So to recap, the Court is not

8   interpreting, given the explanation by Mr. Silva, the

9   supplement that was filed today, Document 32, as being a

10  voluntary notice of dismissal.

11          Mr. Silva has made it clear his intention is not to

12  dismiss his case.

13          Mr. Silva, if you want the 90 days that you said you

14  want, that has to be done in the form of a motion to stay.

15          Did you make a note of that?

16          MR. SILVA:  Motion to stay?

17          Could you grant that if I just wrote it on a piece of

18  paper?

19          THE COURT:  Well, no, because that's something Judge

20  Howard will consider.

21          MR. SILVA:  Oh, Ms. Howard.

22          THE COURT:  But you -- do you have a pen?

23          Here, let me give you a pen.

24          MR. SILVA:  Thank you, Your Honor.

25          THE COURT:  So then you can write -- at least just

 1    write down the name of it so you can remember that.

 2              MR. SILVA:  Okay.  Thank you.

 3              THE COURT:  All right.

 4              MR. SILVA:  What is it?

 5              THE COURT:  Motion to stay.

 6         And then once you file that, Mr. Baldridge will file

 7    a response to it, and then it will be considered by the Court.

 8    Right?

 9         And you just state your reasons for wanting basically

10    to delay the case for 90 days, like you explained to me.

11         All right?

12              MR. SILVA:  Okay.  So basically -- so basically you

13    decided that the case will continue.

14         Now, can Mr. Baldridge challenge that because of the

15    wording or -- what I'm saying is if I leave today, you know,

16    because I do -- Mr. Baldridge's competent.  He's definitely by

17    the top five premier lawyer in the country, so he'll be right

18    on top of everything.

19              So --

20              THE COURT:  Well, let's -- not to interrupt you.  But

21    if he files something, he may disagree with how I interpreted

22    the supplement.  And if he does, he can file something.  And

23    he'll file a motion.  And then -- then you'll respond to the

24    motion.

25              MR. SILVA:  And then every motion has to -- I have to

```
 1    ask permission to --
 2              THE COURT:  No, no.  I'm saying you don't have to.
 3              MR. SILVA:  Okay.
 4              THE COURT:  You don't have to.
 5              MR. SILVA:  Okay.  That's good.
 6              THE COURT:  Right?  You don't have to.
 7              And, of course, Mr. Baldridge can file any motion he
 8    wants in that regard, and then you respond to it.
 9              MR. SILVA:  Okay.  So basically, Your Honor, like
10    so -- so you -- so basically you ruled that that's not a motion
11    to dismiss.
12              But can he come back and say:  Oh, you know what, I
13    think that is or --
14              THE COURT:  He could come back and basically say this
15    is, and he could ask Judge Howard to interpret it as --
16              MR. SILVA:  This way.
17              THE COURT:  -- as a notice of voluntary dismissal.
18              But, you know, that's part of the process.
19              MR. SILVA:  Right.
20              THE COURT:  And then you respond.
21              MR. SILVA:  Well, actually, Your Honor, I did a
22    motion to recuse because I don't see how she could fairly -- I
23    honestly -- I think, since I honestly don't think she can be
24    considered to be a fair and impartial judge anymore.
25              Obviously the numerous misogynistic comments I made,
```

1   so she could easily -- so I really believe that the motion to

2   recuse -- I mean, how is that going to happen?  Because there's

3   just obviously no way that she could be impartial at this

4   point.

5           THE COURT:  Well, let --

6           MR. SILVA:  Plus, I accused her of depriving my

7   rights.

8           So obviously if you make numerous misogynistic

9   comments, and then say:  Oh, you committed a crime -- I mean,

10  obviously she has to be taken off the case; right?

11          THE COURT:  Well, no, not obviously.  No, she

12  doesn't.

13          Mr. Silva, first of all, judges are accused all of

14  the time of certain things.  And judges understand the --

15  the -- the heat of the litigation, that people get involved in

16  these things and they're passionate about it.

17          And what judges often do -- and I'm not trying to

18  speak for Judge Howard, because she'll have to rule on the

19  motion -- but they don't hold things personally against

20  lawyers.  They don't hold things personally against parties.

21          Now, a lot of what you said in that motion, as you're

22  recognizing here, was not appropriate.

23          But if judges let -- if judges took things personally

24  all the time, the case -- a lot of cases would have a lot of

25  judges, because it's just part of litigation.

1       And that's why I go back to what we were talking

2   about, as I've said already three times today.  You have

3   impressed me today on how you've handled yourself.  You can

4   handle yourself in an appropriate way.  And going forward, you

5   should.

6       And just -- judges -- and, again, I don't want to

7   speak for any judge personally, but I can just tell you that --

8   that judges can't take these things personally and let them --

9   let it affect how they rule on cases.  They just can't.

10      Because it's -- first of all, it's their sworn duty

11  not to.  And if it does affect them personally and they can't

12  be fair and impartial, they'll say so.

13      And so you'll just have to see what happens.  But

14  it's just not a good idea to do that to anybody or do it

15  anymore, but --

16      MR. SILVA:  Judge, I wanted to -- if I can

17  (unintelligible).  I'm trying to think.  There was something I

18  meant to ask.

19      Let's see.  It's all here.

20      Oh.  Your Honor, can you talk about -- so basically

21  my first two cases were against Alison Swift.  And then this

22  case is against this Rights Management company.

23      So can you -- my -- what is your, you know, opinion

24  on was that considered the same person as in -- let's just say

25  Judge Howard, you know, by your impartial means, states that:

1  Oh, yes, I did see that and it's without prejudice, would you

2  see it as the same person, in your opinion?

3          THE COURT:  Well, you know, I can't give an advisory

4  opinion.  That's something that I'm not allowed to do and it's

5  not an issue before me.  So --

6          MR. SILVA:  But you -- I mean, you basically stated

7  before basically -- that it's a different person; right?

8          THE COURT:  Well, I was just recognizing that it's a

9  different party.

10          MR. SILVA:  So basically, if it's a different party,

11  then obviously -- because the thing is, I wouldn't -- if I

12  could -- if I could -- (unintelligible) sentence, you know, it

13  wouldn't be considered the same party, then obviously I would

14  like to, you know, get health -- you know, mentally stable.

15          But, I mean, like, obviously, under the

16  circumstances, I don't want to have it tossed out, because we

17  are talking -- we are talking more -- like I say, if the mark

18  is fraudulent and everything as such, you know, we are talking,

19  you know, $100 million plus, so obviously it would be in the

20  defense's best -- you know, to get it thrown out under the

21  circumstances to where I couldn't file, obviously.

22          So, you know.  All right.  So you're saying it's a

23  different party.  For the record, it's a different party.

24          THE COURT:  For the record, it's a different party?

25          Can I just say this, that you said -- that I have no

```
1    idea whether that means under the rule it would be viewed as
2    the same or similar claim or part of the same claim.  I have
3    no -- I have no -- I haven't researched it.
4              This just came up --
5              MR. SILVA:  I'll get it to you.
6              THE COURT:  -- ten minutes before we came in here,
7    and I wouldn't be able to advise you otherwise.
8              But there's an argument, as Mr. Baldridge has said,
9    that regardless of the party and regardless of the number of
10   the trademark, that -- that his view would be that the law is
11   that it is the same claim or this claim was part of the
12   previous claim where you dismissed the case.
13             You know, I don't know.  He just -- maybe
14   Mr. Baldridge is -- has seen this before, but he received your
15   filing at about the same time I did.
16             MR. SILVA:  Obviously, so you're just trying -- he
17   wanted obviously -- but I was like -- when I first came in
18   here, I was like -- I noticed the (unintelligible), I'm
19   thinking they must be getting a haircut today.
20             But let me think.  So basically a different party,
21   you got a different party.
22             THE COURT:  But here's the thing.  You -- you go back
23   and look at whatever you want to look at to see what you think
24   about it.  Because you can file a voluntary notice of dismissal
25   at any time.  That's up to you.
```

1      And so if you -- if you rethink that, what -- we have

2  a form that -- that someone can -- can sign and fill out to

3  voluntarily dismiss a case.  There's a form.

4           MR. SILVA:  Uh-huh.

5           THE COURT:  And if Mr. Baldridge doesn't object to

6  it, I can send the form with you.

7           And if you decide to do it, then all you would have

8  to do is sign the form.

9           But I -- from what you're telling me today, if

10  there's a question that it could end up being a decision on the

11  merits, which means it would be with prejudice, you do not want

12  to dismiss your case.  That's what I'm hearing today.

13          MR. SILVA:  Yeah.

14          THE COURT:  But if you want to dismiss the case and

15  call it without prejudice, and then let -- and then put the

16  ball in Mr. Baldridge's court and let him try to convince Judge

17  Howard that it should be with prejudice, then you could do

18  that.

19          MR. SILVA:  So if it's dismissed with prejudice, does

20  that mean you have to go to a district -- or circuit court to

21  get that appealed and whatnot?

22          THE COURT:  Well, if your -- I suppose that if Judge

23  Howard decided that it was with prejudice, then you would be

24  able to appeal it at that time.

25          Is that how you would see it, Mr. Baldridge?

1          MR. BALDRIDGE:  Yes, sir.

2          If there was an adjudication on the merits, in other

3     words, a with-prejudice dismissal, I think Mr. Silva could then

4     decide whether or not he wants to take this to the

5     Eleventh Circuit.

6          MR. SILVA:  Well, one last --

7          MR. BALDRIDGE:  Which is a --

8          THE COURT:  I'm sorry, sir?

9          MR. BALDRIDGE:  I was just saying, which is the

10    appellate court.  I was doing that for Mr. Silva.

11         THE COURT:  Yes.  Thank you.

12         MR. SILVA:  And also, actually -- all right.

13    Basically -- can a person -- okay.  So basically I'm suggesting

14    that I'm mentally insane at the time.

15         So mentally insane, you know, as in, let's say, okay

16    -- so let's say, you know, it was with -- without prejudice,

17    but then technically it's with prejudice.

18         I mean, can an insane person be responsible for

19    accepting, you know, a circumstance in a motion and not have it

20    be filed?

21         As in, like, under the law -- I mean, under the law,

22    the case probably should not have even been filed, is what I'm

23    trying -- so basically -- basically, could this case even be

24    seen as a legitimate case because I'm insane?

25         THE COURT:  Well, here's the thing, though.  That's

1  what I tried to state before, and I probably didn't state it
2  very well, but a state court would have to adjudicate you
3  insane or incompetent.
4         And so at this point, even though you're telling me
5  you think you might be incompetent, and you think you -- I
6  think you hedged it a little, you might be insane, as far as
7  I'm --
8         MR. SILVA:  I think literally, anyway.
9         THE COURT:  Well, as far as I -- as far as I'm
10  concerned, you are -- I'm not making that finding.  And I -- I
11  don't have the authority to make that finding in a civil case.
12        MR. SILVA:  Probably it's going to be under different
13  circumstances if you could.
14        THE COURT:  So, I mean, I know what you're saying.
15  If someone's incompetent or insane, how can they knowingly --
16        MR. SILVA:  Dismiss the case.
17        THE COURT:  -- dismiss the case?
18        But at this point, you're not, in the eyes of the
19  Court.
20        MR. SILVA:  Well, it's fair to say a genius -- if a
21  person whose genius/insane, you know, fine line between the
22  two, so -- right?  Right?
23        THE COURT:  I've heard that before.
24        MR. SILVA:  All right.  So let me think if I have any
25  more questions.

 1              Let's see.

 2              That's pretty much it, Your Honor.

 3              You know, I think I say -- you know, we've spent the

 4    last couple hours going over everything, so unfortunately, you

 5    know, in this situation -- actually, so -- I can file a hearing

 6    at a later date for the merits of the case.  Is that something

 7    I could do as well, obviously?

 8              THE COURT:  Can you say that again?

 9              MR. SILVA:  Well, let's say -- okay, so we're going

10    to go all -- I'll go along with the Court today.  But if I

11    would like -- could I file a -- basically, is there, like, a

12    general hearing I could file for it, to state, you know, the

13    goals or the merits of the case?

14              How would that happen?

15              THE COURT:  Well, at some -- let's just say the case

16    moves forward.  And Mr. Baldridge -- and I don't want to speak

17    for you, sir -- but he indicated he's going to file a motion to

18    dismiss the case on the merits.

19              And so you'll file a response to that.

20              And in the response, you can ask for a hearing, if

21    you want.  It doesn't mean you'll get one, but that's where you

22    would ask for one.

23              MR. SILVA:  You can see why, in my state of mind,

24    that, you know, regardless of how we got to a hearing today, I

25    mean, technically speaking, you know, I don't see -- you know

1    what I mean?

2              Like, I didn't see any other way, to be honest.

3              Because, obviously, the Court -- let's just say the

4    first two cases weren't nearly as specific as this one.

5              And as you can see over time, my knowledge of the law

6    has gotten better, but you know what I mean?

7              I almost felt like that if it wasn't done, that we

8    wouldn't even have a hearing.

9              Does that make sense?

10             THE COURT:  If what wasn't done?

11             MR. SILVA:  Inappropriate communications.

12             THE COURT:  You know --

13             MR. SILVA:  Because what I'm saying is you're a

14   magistrate judge; right?

15             So I mean, the magistrate can see over -- can

16   basically oversee all aspects of a civil suit.

17             So obviously the (unintelligible) is not in the terms

18   of figuring if anything is fraudulent or not.

19             And basically being that, you know, we all walk away.

20   I mean, I'm not, you know, in handcuffs.  It's a good thing.

21             So you know what I'm saying?  So basically --

22             THE COURT:  Can I interrupt you?

23             MR. SILVA:  Yes, Your Honor.

24             THE COURT:  If you want a hearing in the case, don't

25   start filing inappropriate things --

```
 1                 MR. SILVA:  Yes, Your Honor.
 2                 THE COURT:  -- and harassing Mr. Baldridge.
 3                 MR. SILVA:  Of course not.
 4                 THE COURT:  File something asking for a hearing.
 5                 MR. SILVA:  You -- can you give me -- what -- can
 6      you -- I mean, you can't give opinions, but you've seen the
 7      laws and the merit -- you've seen both sides.
 8                 So do you believe it's a good one?  Can you tell me
 9      that, or no?
10                 THE COURT:  No, I can't tell you.
11                 MR. SILVA:  You can't tell me that?
12                 THE COURT:  I can't tell you that.
13                 MR. SILVA:  Because, you know, it's obviously you
14      said that -- obviously we've complimented each other in the
15      hearing.  You're obviously a great judge.  You know, I've
16      handled myself really well.
17                 So basically all -- all the laws I stated, he's like,
18      no, you know, if I did a good job.  But obviously that's not
19      the case, you can't tell me.
20                 So, Your Honor, that's pretty much it, Your Honor.
21      And I appreciate you taking the time.
22                 Because I thought -- honestly, I thought you'd come
23      in and there'd be, like, a whole bunch of people waiting for
24      the next case.  And then be like -- I didn't think it was going
25      to be as, you know, relaxing, a calm situation.  That helped
```

```
1    out a lot as well.
2              THE COURT:  All right.  I think I was trying to
3    summarize what we're doing now.
4              MR. SILVA:  Okay.
5              THE COURT:  I'm going to enter a protective order --
6              MR. SILVA:  Yes, Your Honor.
7              THE COURT:  -- and you're going to just communicate
8    with Mr. Baldridge.
9              There's not going to be any more of the profanity or
10   the other --
11             MR. SILVA:  That's --
12             THE COURT:  -- harassment.  It's going to be all
13   business.  Like you were here.
14             MR. SILVA:  Yes, Your Honor.
15             THE COURT:  And then if -- I'm going to provide you a
16   form.  If you decide to -- as you think it through, if you
17   decide to file a notice of dismissal, and then if you want to
18   or decided it's appropriate to file a motion to stay, you'll do
19   that.
20             MR. SILVA:  Yes.
21             THE COURT:  And then Mr. Baldridge will respond to
22   that.
23             And so we'll take it a step at a time.
24             But I am going to enter a protective order --
25             MR. SILVA:  Yes, Your Honor.
```

```
 1              THE COURT:  Just to set out what I've said about how
 2   we're all going to conduct ourselves.
 3              MR. SILVA:  Thank you, Your Honor.
 4              THE COURT:  All right.  Do you have anything else,
 5   Mr. Silva?
 6              MR. SILVA:  Not at this time, Your Honor.
 7              THE COURT:  All right.  Mr. Baldridge, anything else,
 8   sir?
 9              MR. BALDRIDGE:  Nothing, Your Honor.
10              Thank you for your time.
11              THE COURT:  All right.  Thank you.
12              All right.  Then we're in recess.
13              MR. SILVA:  Thank you, Your Honor.
14              COURT SECURITY OFFICER:  All rise.
15         (Proceedings concluded at 3:58 p.m.)
16                            -  -  -
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

UNITED STATES DISTRICT COURT)

MIDDLE DISTRICT OF FLORIDA  )

     I, court-approved transcriber, certify that the foregoing
is a correct transcript from the official electronic sound
recording of the proceedings in the above-entitled matter.


     Dated this 19th day of August 2018.




                         /s/Cindy Packevicz Jarriel
                         Cindy Packevicz Jarriel, RPR, FCRR