# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

DANIEL JAMES SILVA,

    Plaintiff,

vs.

                              Case No. 3:18-cv-688-J-34JRK

TAS RIGHTS MANAGEMENT, LLC,

    Defendant.
_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion for Contempt, Sanctions, and Dismissal with Prejudice (Doc. 48; Motion), filed on November 2, 2018. In the Motion, Defendant asserts that Plaintiff has engaged in numerous violations of Court Orders warranting dismissal under Rule 41(b), Federal Rules of Civil Procedure (Rule(s)) and the Court's inherent authority. Plaintiff filed a response in opposition to the Motion on November 5, 2018, and an "Official Notice" which appears to be an unauthorized additional response to the Motion on November 9, 2018. See Response to [S]anctions (Doc. 49; Response); Official Notice (Doc. 52; Notice). On November 21, 2018, with leave of Court, Defendant filed a Supplement to Defendant's Motion for Contempt, Sanctions, and Dismissal with Prejudice (Doc. 56; Supplement). Accordingly, this matter is ripe for review.

**I.    Applicable Law**

Pursuant to Rule 41(b), "[a] district court is authorized, on defendant's motion, to dismiss an action for failure . . . to obey a court order or federal rule." See Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985) (citing Rule 41(b)). "In addition to its power

under Rule 41(b), a court also has the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation." See Zocaras v. Castro, 465 F.3d 479, 483 (11th Cir. 2006).  Whether acting under Rule 41(b) or the Court's inherent authority, a dismissal with prejudice is proper only where "'(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice.'"  See Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337-38 (11th Cir. 2005) (quoting World Thrust Films, Inc. v. Int'l Family Entm't, Inc., 41 F.3d 1454, 1456 (11th Cir. 1995)); Townsend v. Beck, 295 F. App'x 950, 951-52 (11th Cir. 2008) ("'There must be both a clear record of willful conduct and a finding that lesser sanctions are inadequate.'" (quoting Zocaras, 465 F.3d at 483)); see also Jacobs v. Clayton Cnty. Solicitor General Office, 685 F. App'x 824, 826-27 (11th Cir. 2017); Levinson v. WEDU-TV, 505 F. App'x 919, 920 (11th Cir. 2013); Gratton v. Great Am. Commc'ns, 178 F.3d 1373, 1374 (11th Cir. 1999).

"Dismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances."  See Goforth, 766 F.2d at 1535.  "Mere negligence or confusion is not sufficient to justify a finding of delay or willful misconduct."  Zocaras, 465 F.3d at 483.  However, "[w]hile dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."  See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989); see also McDonald v. Emory Healthcare Eye Ctr., 391 F. App'x 851, 854 (11th Cir. 2010) ("Generally, we have held that a district court does not abuse its discretion in dismissing a civil complaint under Rule 41(b) where the record indicates deliberate and repeated conduct of noncompliance."); State Exchange Bank v. Hartline, 693 F.2d 1350, 1352 (11th

2

Cir. 1982) ("Dismissal is generally reserved for cases of willful disobedience to court orders."). A pro se litigant who fails to follow an order of the court or exhibits a lack of respect for the Court and its authority may be subject to Rule 41(b) dismissal. Gaines v. Bryant, No. 2:05-CV-1124-MEF, 2008 WL 696828, at *2 (M.D. Ala. March 13, 2008); see also Moon, 863 F.2d at 837. Indeed, a pro se plaintiff is "subject to the relevant law and rules of the court, including the Federal Rules of Civil Procedure." Moon, 863 F.2d at 837.

## II. Discussion

Plaintiff initiated this action on May 25, 2018, against Defendant TAS Rights Management, LLC, a company related to the celebrity Taylor Swift. See Complaint (Doc. 1).[1] On July 31, 2018, Defendant filed a motion requesting that the Court enter a protective order requiring Plaintiff to cease communications with Defendant and its related individuals, to communicate only with defense counsel and only in writing, to stop making "illegal threats and improper statements," and to comply with the rules of decorum. See Defendant's Motion for Protective Order (Doc. 22) at 5-6. As evidence of the need for such an order, Defendant attached seventeen emails sent from Plaintiff to defense counsel between June 7, 2018, and July 29, 2018. See Defendant's Motion for Protective Order, Exs. 1-17. These emails are rife with taunts, sarcasm, expletives, and insults. See, e.g., id., Ex. 1 ("keep ignoring me [expletive] and the next call I make ill be the FBI . . . . ill give [Swift] one more chance to settle before I destroy her life completely!!!!!!!"), Ex. 3 ("u ask for a 2 month extension to get married, what [expletive] world do u think we live in ? . . . don't embarrass yourself or your client and come up with a half-[expletive] answer that ill

---

[1] This lawsuit marks the third time Plaintiff has attempted to sue Taylor Swift or a related entity. See Silva v. Swift, Case No. 3:17-cv-292-J-20MCR, ECF No. 25 (M.D. Fla. July 13, 2017) (order dismissing case without prejudice); Silva v. Swift, Case No. 3:17-cv-814-J-34JRK, ECF No. 13 (M.D. Fla. May 1, 2018) (order dismissing case without prejudice).

3

tear though in my sleep"); Exs. 5 & 7 ("Im going to fecking legally obliterate your client in the court room"); Ex 8 ("see u in court [expletive]"); Ex. 10 ("before u go crying to the judge again like 2 [expletive] retarded children keep in mind !" . . . "now to you [male counsel] who acts like a childish [expletive]" . . . and you [female counsel] who acted like a vindictive [expletive]"); Ex. 13 ("tell [Swift] to enjoy [expletive] prison"); Ex. 17 ("who did you think you 2 are [expletive] with . . . [counsel] you're an [expletive]"). On August 3, 2018, Plaintiff filed a response to the Motion for Protective Order. See Response to Motion for Protective order (Doc. 27; Response to the Protective Motion). In his Response to the Protective Motion, Plaintiff stated in notable part: "It was an elaborate hoax with one simple goal to commit psychological warfare against the defendant and [defense counsel] . . . ." Id. at 16. Plaintiff ended his Response by calling defense counsel "a [expletive] lowlife piece of [expletive] . . . ." Id. at 19.

Based on the foregoing, the Magistrate Judge assigned to this case set the matter for a hearing. The hour-and-a-half hearing took place on August 16, 2018, and Plaintiff attended in person. See Minute Entry (Doc. 33). During the hearing, the Magistrate Judge sternly cautioned Plaintiff that the use of inappropriate language, making statements that could be interpreted as threatening, and general harassment of others could result in his case being dismissed as a sanction, with prejudice. See Transcript of August 16, 2018 Hearing (Doc. 36; Tr.) at 49-50. The Judge instructed Plaintiff that while he has a right to bring his lawsuit, he must "conduct [himself] within the rules and requirements of the decorum of the court . . . ." Id. at 50. The Magistrate Judge informed Plaintiff that he would enter a protective order requiring Plaintiff to communicate only with Defendant's attorney, Douglas Baldridge, and that "[t]here's not going to be any more of the profanity or the other

.. harassment. It's going to be all business." Id. at 67. Plaintiff assured the Magistrate Judge that he could conduct himself appropriately, and based on Plaintiff's civil conduct at the hearing, the Magistrate Judge found that Plaintiff was capable of complying with the rules of Court. Id. at 40, 49.

Accordingly, on August 22, 2018, the Court entered the following Protective Order:

A. Plaintiff shall not communicate with Defendant, its affiliated companies, agents, or related individuals, other than as set forth below.
B. To the extent communications with Defendant are necessary, Plaintiff shall communicate <u>only</u> with James Douglas Baldridge, Defendant's counsel.
C. All communications with Mr. Baldridge shall be in writing.
D. Plaintiff's communications with Mr. Baldridge shall not contain any inappropriate statements, threats of any kind, or insults. Plaintiff shall conduct himself with civility, respect, and proper behavior.

See Order (Doc. 34; Protective Order) at 2. In the Protective Order, the Court relieved the parties of their obligation to confer under Local Rule 3.01(g), United States District Court, Middle District of Florida, and warned that "a violation of this Order may lead to sanctions such as [Plaintiff's] pleadings being stricken, an imposition of monetary penalties, or this action being dismissed with prejudice." Id. at 2.

On September 10, 2018, Plaintiff requested a stay of this action so that he could recover from what he described as his post-traumatic stress disorder (PTSD). See Motion to Stay (Doc. 41) at 8, 12-13. On October 4, 2018, this Court entered an Order (Doc. 46) granting Plaintiff's request and staying this matter until January 30, 2019. See Order (Doc. 46; Stay Order). In the Stay Order, the Court issued the following directive:

During the pendency of the stay, Plaintiff shall not file any additional pleadings, motions or "supplements" in this matter and shall have **NO** contact with Defendant, its counsel, or Taylor Swift. **VIOLATION OF THIS ORDER MAY RESULT IN THE DISMISSAL OF THIS ACTION.**

5

See Stay Order at 2. Less than a month after the Stay Order, Plaintiff willfully and egregiously violated the Court's Orders by driving from Florida to Tennessee in an attempt to make contact with Taylor Swift. See Motion, Exs. 1-12.

Specifically, during the time period of October 25-30, 2018, Plaintiff drove to the home of Swift's mother in Tennessee and delivered a package containing a cell phone, a photograph, a stuffed animal, and a letter addressed to Swift, inviting her to text him. See Motion, Ex. 12. As part of this endeavor, and also in direct contravention of the Stay Order, Plaintiff sent eleven separate emails to defense counsel informing him of this trip, explaining his intentions behind the trip, and requesting contact with Swift, whom he often refers to as Alison. Id. For example, on October 26, 2018, Plaintiff sent the following email to defense counsel:

> I don't think Alison has the courage to meet me face to face I haven't decided 100 % if im going but if I do my intentions are only to drop off the Simon and Garfunkel <u>im putting my lawsuit on the line to prove a point if u try to get case dismissed off this ill appeal</u> I don't care about case anymore I never did I only cared about saving the family I love life is more then money and fame im calling out Alison swifts courage (meet me at the gate Alison on sunday) if u have the guts sunday at 3 . . . ."

See Motion, Ex. 4 (grammatical and typographical errors in original) (emphasis added). On October 29, 2018, while in Tennessee, Plaintiff sent another email to counsel stating, in pertinent part:

> . . . I knew I hads to get the simon and Garfunkel to that door step no matter what so I risked my life, missed the redsox win the series and <u>am putting my 100 million dollar lawsuit at risk for now the 2nd time</u> at noon and u would think I would be upset but im not for some reason to sacrifice so much to do a kind gestor sounds crazy idk It just feels right and if I have to sacrifice all that to help get back some of the grace I oo from Alison, ill do to gladly later james

6

Id., Ex. 7 (grammatical and typographical errors in original) (emphasis added). Later that same day, Plaintiff again emailed counsel, this time stating in relevant part:

> … I really wished the lawsuit could have ended today under the right terms <u>u can report my contact to the court if u want but if u tried to get it thrown out over the signed s and g u will feel worse then u do right now</u> what u think even though its a nice gestor that <u>I broke the order</u> so let be safe and have him arrested and case thrown out then Alison could feel bad and donate to my non profit a year from now when she cant live with herself . . . . id like to saw something to Alison plz forward this to her
>
> (I drove all the way out here to BFE Tennessee almost died from the altitude change, missed the redsox winning and almost got tackled by one of your guards I did all that for u to make up for the pain I caused u and this is how u treat me like [expletive] you should feel bad . . .)

Id., Ex. 9 (grammatical and typographical errors in original) (emphasis added). A few minutes later, Plaintiff emailed again:

> I really did drive all the way from Orlando 690 miles each way over 1200 round trip just to bring Alison and her mom that poster I made and the simon and Garfunkel just t to be not even with and akward intentions and do u know why ? because I wanted to do something kind and friendly towards Alison that what a friend would do have a good xmas and new years im off for awile james take care.

Id., Ex. 10 (grammatical and typographical errors in original). Finally, the next day, Plaintiff sent a diatribe to defense counsel with the subject line "forward to alison." Id., Ex. 11. In this email, Plaintiff calls Swift an "evil [expletive]" and states again that he "put [his] 136 million dollar lawsuit at risk twice . . . just to be kind and do a friendly act towards you . . . ." Id.

Significantly, in his Response to the Motion for Sanctions, Plaintiff does not deny that he engaged in this conduct. See Response at 1 ("fully admit to all allegation's [sic] stated in Motion for Sanctions"). Moreover, Plaintiff concedes that he engaged in this conduct knowing that it violated the Court's Orders and could result in dismissal. See id.

7

("I was willing to scarified [sic] a 100-million-dollar lawsuit for your friendship Alison swift"). Plaintiff explains that he drove to Tennessee and violated the Court's Orders "to protect" Swift, as well as "to slightly taunt" the Court. Id. at 4, 5. Plaintiff also addresses a portion of his Response to defense counsel telling him to "Go [expletive] Yourself its time to play ball," id. at 3, and another portion to Swift, referring to her as "an evil [expletive]" and stating "id still like to be your friend because ill destroy you as my enemy," id. at 5. In his Notice, Plaintiff again concedes that he violated the Court's Orders but insists it was for Swift's benefit. See Notice at 1 ("I admit to the charge of contempt of court but it was only to help defend Alison swift . . . ."). Although Plaintiff asks the Court for the opportunity "to prove to the court that [he] can follow the orders given," his post script to the Notice conveys otherwise. Id. at 2. Specifically, Plaintiff states:

> Ps. When I think to myself did I just blow a 100 million dollar lawsuit to show Alison swift kindness, <u>I think to myself was it worth it and under the same circumstances would I do it again ? the answer is yes</u> . . . I felt it was the right thing todo, and to alison swift how dare you use my kindness against me, I drove all the way out to Tennessee to offer a priceless musical artifact (signed simon and Garfunkel) and you try to ruin my case because of it, it just shows you how evil and mean u have gotten . . . ."

Id. at 2 (grammatical and typographical errors in original) (emphasis added). Indeed, only the day before he filed the Notice, Plaintiff violated the Orders again, this time by sending an email to defense counsel with an expletive in the subject line stating "haha your reply got striken [sic] don't even know the rules youre going to love what I file tomorrow take care ;)." See Supplement, Ex. 1.

Even after Defendant filed the Motion seeking dismissal based on Plaintiff's violations of the Court's Orders, Plaintiff made no effort to reform his behavior. Instead, he continued filing documents in violation of the Stay Order. For example, Plaintiff filed a

8

Motion for Sanctions (Doc. 55) on November 20, 2018, in which he again concedes that he violated the Court's Order and "under the same circumstances would do it again . . . ." See Motion for Sanctions (Doc. 55) at 5. Plaintiff also explains that he has been waging "psychological warfare" against Swift and that "she has become evil and bitter and mean . . . ." Id. at 5-6. Apropos of nothing and contrary to the Court's Stay Order, Plaintiff has continued to file "Official Notices" on the Court docket. See Official Notice (Doc. 61), filed December 14, 2018; Official Notice (Doc. 62), filed January 3, 2019; Official Notice (Doc. 63), filed January 23, 2019. In his January 3, 2019 Official Notice, Plaintiff again concedes that he broke the Court's Order and would do it again under the same conditions. See Official Notice (Doc. 62) at 6 ("[I]f charged for contempt id plead guilty to such a crime and would say being charged with a crime was worth trying to save what's left of Alison's humanity and would brake the order under the same conditions again . . . if the stay is upheld, I most certainly broke the order to save Taylor swifts career."). Throughout these filings, Plaintiff insists that Swift must meet with him in order to end this lawsuit before he destroys her career and that of her attorney. See, e.g., Official Notice (Doc. 63) at 8 ("On February 1st ill contact [defense counsel] with exact instructions on where the meeting will take place along with another few demands, if all demands are not met in every detail and to the exact T, I will file a 60-page summary judgement when I get back to the states. I gave you your tour Alison and now your time belongs to me for the foreseeable future until this case can be resolved. I promise me Alison you will atone for the sins you have committed against me by helping reunite with the family that I love . . . ."); Official Notice (Doc. 62) at 16-17 ("[Y]ou have from the 30th of this month to the 3rd of next to come to Ireland and discuss a remedy for this lawsuit or I file a summary judgement on February

3rd when I get back to America condemning both you and [counsel] to life of misery prepare yourself this next month Alison because we will be having a face to face on my terms"); Official Notice (Doc. 61) at 3 ("If judge Howard doesn't lift the defective stay before Christmas and you don't help reunite me with my family there will be ruthless unrelenting misery I will pesto upon swift and [counsel] (all legal) of course you better move fecking mountains (swift) to get here by Christmas, if not I file a summary judgement on February 1st 2019 condemning you both to a life of heartache (swift and [counsel]).").

As is evident from the foregoing, Plaintiff has deliberately and repeatedly violated the Protective Order and Stay Order. Contrary to the directives of the Protective Order and the instructions of the Magistrate Judge at the August 16, 2018 Hearing, Plaintiff's emails to opposing counsel and court filings are replete with foul language and inappropriate comments. See supra at 6-9; see also, e.g., Response at 2 ("[U]nder normal circumstances you would throw this case out and tell me to go [expletive] myself"); id. at 3 ("[Y]ou officially got yourself [an expletive] show"); Official Notice (Doc. 62) at 15 ("o and too you [counsel] you're not an [expletive] you're a HUGE [expletive] . . . . life could be much worse just think I could be like your [expletive] lawyer and try to send you to prison . . . you couldn't write [expletive] like this the women who locked herself away from the world so she could never be hurt by it now has her fate in the kindness of another who she tried to destroy."). Most significantly, Plaintiff's decision to drive several hours to Tennessee in an attempt to manufacture an in-person meeting with Swift soon after the Court had expressly directed him to have no contact with her or her counsel is an egregious and inexcusable violation of the Court's Stay Order, Plaintiff's protestations of a benevolent motive notwithstanding. Plaintiff's emails to opposing counsel and the statements in his

Court filings demonstrate that he was fully aware his contact with counsel and trip to Tennessee violated the Court's Orders, and that he made an intentional decision to disregard those Orders. Thus, it cannot be said that Plaintiff acted negligently or based on a misunderstanding of the Court's Orders. Cf. EEOC v. Troy State University, 693 F.2d 1353, 1357 (11th Cir. 1982) ("A party's simple negligence or other action grounded in a misunderstanding of a court order does not warrant dismissal."). This record of willful contempt for the Court and its Orders plainly satisfies Rule 41(b) standard for dismissal. See Moon, 863 F.2d at 837 ("[D]ismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion.").

Moreover, the Court is convinced that no lesser sanction will suffice. Plaintiff was fully aware that his actions could result in the dismissal of this case as is reflected in his emails to counsel and subsequent filings, yet he was undeterred. Both the Protective Order and the Stay Order expressly instructed Plaintiff that failure to comply with the Court's Orders could result in a dismissal of this action. See Protective Order at 2; Stay Order at 2. Most significantly, the Magistrate Judge specifically warned Plaintiff in person, in open court, that he must comply with the rules of civility expected of all litigants and their counsel or face dismissal of his action. Rather than heed these clear warnings and adjust his behavior, Plaintiff escalated his misconduct. In addition, following Defendant's Motion for Sanctions, Plaintiff stated three times, in Court filings, that under the same circumstances he would violate the Court's Orders again. While Plaintiff requests an opportunity to prove that he can comply with the Court's Orders, his filings in the months following his trip to Tennessee and the communications prompting the Motion for Sanctions demonstrate, unequivocally, that he cannot. In light of the foregoing, the Court determines that

Defendant's Motion is due to be granted and dismissal of this action with prejudice pursuant to Rule 41(b) is fully warranted. Accordingly, it is

**ORDERED:**

1. Defendant's Motion for Contempt, Sanctions, and Dismissal with Prejudice (Doc. 48) is **GRANTED.**

2. This case is **DISMISSED WITH PREJUDICE.**

3. The Clerk of the Court is **directed** to terminate any pending motions as moot and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of February, 2019.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties